## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

RAMON WARD,

|  |  |
|---|---|
|  | CASE NO.: 21-CV-12742 |
|  | HON.  PAUL D. BORMAN |

        Plaintiff,

v

COUNTY OF WAYNE,
ROBERT AGACINSKI
NANCY WESTVELD, JANET NAPP,
MONICA CHILDS, DANNY MAYNARD,
DALE COLLINS, FRED JORGENSEN,
TONY SANDERS, MARK THOMAS, and
UNKNOWN EMPLOYEES OF THE WAYNE
COUNTY PROSECUTOR'S OFFICE,
AND THE DETROIT POLICE DEPARTMENT,

        Defendants.

_____

JOHN SMIETANKA (P20610)
JOSEPH DALY (P81312)
**SMIETANKA LAW GROUP**
Attorney for Plaintiff
4175 Parkway Place Drive #104
Grandville, MI 49418
(616) 667-2217
jas@smietankalaw.com

AUDREY J. FORBUSH (P41744)
**PLUNKETT COONEY**
Attorney for Defendants County of
Wayne, Robert Agacinski, Nancy
Westveld and Janet Napp
Plaza One Financial Center
111 E. Court Street - Suite 1B
Flint, MI  48502
(810) 342-7014/
(810) 232-3159 - fax
aforbush@plunkettcooney.com

JARRETT ADAMS (NEW YORK
#5455712)
**LAW OFFICE OF JARRETT ADAMS,
PLLC**
40 Fulton Street, Floor 7
New York, NY 10038

JAMES R. ACHO (P62175)
JORDAN J. FIELDS (P76989)
ISA M. KASOGA (P70448)
Attorneys for Defendants Monica
Childs, Danny Maynard, Dale Collins,
Fred Jorgensen, Tony Sanders and

| (646) 880-9707 | Mark Thomas |
| jadams@jarrettadamslaw.com | 17463 College Parkway, |
| | 3rd Floor |
| | Livonia, Michigan 48152 |
| | 734-261-2400 |

---

## DEFENDANT WAYNE COUNTY'S ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES AND RELIANCE UPON JURY DEMAND

NOW COMES Defendant, **Wayne County**, by and through its attorneys, **PLUNKETT COONEY**, and for its Answer to Plaintiff's Complaint, states as follows:

### INTRODUCTION

1.      Pursuant to 42 U.S.C. §1983, this is a federal civil rights action by Plaintiff, Ramon Ward, an innocent man, who was unlawfully arrested and detained, sexually assaulted, unfairly prosecuted, and wrongfully convicted of murder in the County of Wayne as a result of Defendants' conduct. Mr. Ward spent 25 years and 10 months in jail and prison for a crime he did not commit.

Defendants' conduct deprived Mr. Ward of his rights guaranteed to him under the United States Constitution, and also constituted tortious conduct under State of Michigan law. Mr. Ward seeks to obtain compensatory damages, punitive damages, costs and attorneys' fees for Defendants' conduct. This action also seeks injunctive and equitable relief against the County of Wayne to reform

the unconstitutional policy and/or custom that was the moving force behind the constitutional rights violations suffered by Mr. Ward.

**Response**: In response to the allegations contained in paragraph 1, Defendant denies any allegation of wrongdoing.

## JURISDICTION

2.     This action is brought under 42 U.S.C. § 1983 to address the deprivation under color of law of Ramon Ward's rights as secured by the United States Constitution and under Michigan state law.

**Response**: In response to paragraph 2, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.  Defendant denies any allegation of wrongdoing.

3.     The Court has jurisdiction over Ramon Ward's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over Mr. Ward's state law claims pursuant to 28 U.S.C. § 1367.

**Response**:  In response to the allegations contained in paragraph 3, upon information and belief, it is admitted.

4.     Venue is proper under 28 U.S.C. § 1391 because the Eastern District of Michigan is the judicial district where the constitutional rights violations suffered by Ramon Ward occurred.

**Response:**   In response to the allegations contained in paragraph 4, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

## PARTIES

5.      Plaintiff, Ramon Ward is a citizen of the United States of America who at all relevant times resided in the State of Michigan.

**Response:** In response to the allegations contained in paragraph 5, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

6.      Defendant, County of Wayne ("Defendant County"), is a body corporate under Article VII, Section 1 of the Michigan Constitution. At all relevant times, Defendant County was the principal and employer of Defendants, Robert Agacinski, Nancy Westveld, and Janet Napp who acted pursuant to Defendant County's policies and customs.

**Response:**  In response to the allegations contained in paragraph 6, it is admitted that Wayne County is a corporate body under the Michigan Constitution and it is admitted that at some point, Agacinski, Westveld and

Napp were employees,  but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

7.      Defendant, Robert Agacinski ("Defendant Agacinski"), at all relevant times, was an adult resident of the State of Michigan and was an assistant prosecuting attorney for the Wayne County Prosecutor's Office ("WCPO"), which is a department of Defendant County.

**Response:**  In response to the allegations contained in paragraph 7, it is admitted that Wayne County employed Robert Agacinski for a period of time. It is denied as untrue that the Wayne County Prosecutor's Office is a "department" of Wayne County as that is an inaccurate legal description.

8.      Defendant, Nancy Westveld ("Defendant Westveld"), at all relevant times, was an adult resident of the State of Michigan and was an assistant prosecuting attorney for the WCPO, which is a department of Defendant County.

**Response:**  In response to the allegations contained in paragraph 8, it is admitted that Wayne County employed Nancy Westveld for a period of time.  It is denied as untrue that the Wayne County prosecutor's office is a "department" of Wayne County as that is an inaccurate legal description.

9. Defendant, Janet Napp ("Defendant Napp"), at all relevant times, was an adult resident of the State of Michigan and was an assistant prosecuting attorney for the WCPO, which is a department of Defendant County.

**Response:** In response to the allegations contained in paragraph 9, it is admitted that Wayne County employed Janet Napp for a period of time. It is denied as untrue that the Wayne County prosecutor's office is a "department" of Wayne County as that is an inaccurate legal description.

10. Defendant, Monica Childs ("Defendant Childs"), at all relevant times, was an adult resident of the State of Michigan and was a Detroit Police Department ("DPD") detective.

**Response:** In response to the allegations contained in paragraph 10, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

11. Defendant, Danny Maynard ("Defendant Maynard"), at all relevant times, was an adult resident of the State of Michigan and was a DPD police officer.

**Response:** In response to the allegations contained in paragraph, 11, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

12.     Defendant, Dale Collins ("Defendant Collins"), at all relevant times, was an adult resident of the State of Michigan and was a DPD detective.

**Response:** In response to the allegations contained in paragraph 12, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

13.     Defendant, Fred Jorgensen ("Defendant Jorgensen"), at all relevant times, was an adult resident of the State of Michigan and was a DPD police officer.

**Response:** In response to the allegations contained in paragraph 13, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

14.     Defendant, Tony Sanders ("Defendant Sanders"), at all relevant times, was an adult resident of the State of Michigan and was a DPD sergeant.

**Response:** In response to the allegations contained in paragraph 14, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

15.     Defendant, Mark Thomas ("Defendant Thomas"), at all relevant times, was an adult resident of the State of Michigan and was a DPD police officer.

**Response:** In response to the allegations contained in paragraph 15, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

16.    Defendants, Unknown Employees of the Wayne County Prosecutor's Office and the Detroit Police Department, at all relevant times, were adult residents of the State of Michigan.

**Response:** In response to the allegations contained in paragraph 16, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

## FACTS
### Facts Pertaining to the Unlawful Arrest and Detention of, Sexual Assault of, the Use of Fabricated Evidence against, Concealment of Exculpatory Evidence from, and Malicious Prosecution of Ramon Ward

17.    On January 25, 1994, the bodies of Denise Sharon Cornell ("Cornell") and Joan Gilliam ("Gilliam") were found in a vacant home located in Detroit, Michigan.

**Response:** In response to the allegations contained in paragraph 17, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

18.    Cornell and Gilliam were murder victims who died of gunshot wounds to the head.

**Response:** In response to the allegations contained in paragraph 18, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

19.     Ramon Ward did not shoot or kill Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 19, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

20.     Defendant Collins was in charge of the DPD investigation into the murders of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 20, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

21.     On January 28, 1994, Defendant Maynard took a statement from a witness about the murders of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 21, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

22.    In the statement, when asked by Defendant Maynard who would want to harm Cornell, the witness responded by identifying the person later identified as the actual killer of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 22, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

23.    In the statement, the witness told Defendant Maynard that the person later identified as the actual killer of Cornell and Gilliam had beaten Cornell a week earlier over an alleged burglary.

**Response:** In response to the allegations contained in paragraph 23, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

24.    On January 28, 1994, an unknown DPD officer wrote a progress note identifying as a suspect the person later identified as the actual killer of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 24, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

25.    On January 29, 1994, Defendant Collins took a statement from a witness about the murders of Cornell and Gilliam.

**Response:**  In response to this paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

26.   In the statement, the witness described for Defendant Collins a suspect in the murders of Cornell and Gilliam which did not match the description of Ramon Ward but instead matched the description of the person later identified as the actual killer of Cornell and Gilliam.

**Response:**  In response to the allegations in paragraph 26, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

27.   During the statement, Defendant Collins asked the witness if he knew the person later identified as the actual killer of Cornell and Gilliam and the witness responded that he did not.

**Response:**  In response to the allegations contained in paragraph 27, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

28.   On April 20, 1994, at the direction of Defendant Childs, Defendant Jorgensen, Defendant Sanders, and Defendant Thomas arrested Ramon Ward and his brother for the murders of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 28, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

29.    There was no warrant for the arrest of Ramon Ward.

**Response:** In response to the allegations contained in paragraph 29, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

30.    There were no facts to support either reasonable suspicion to detain or probable cause to arrest Ramon Ward for the murders of Cornell and Gilliam.

**Response:** The allegations contained in paragraph 30 are denied as untrue in the form and manner alleged and in fact.

31.    The DPD arrested at least two other suspects in the murders of Cornell and Gilliam prior to arresting Ramon Ward.

**Response:** In response to the allegations contained in paragraph 31, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

32.    Defendant Jorgensen, Defendant Sanders, and Defendant Thomas conveyed Ramon Ward to DPD headquarters.

**Response:** In response to the allegations contained in paragraph 32, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

33.    Defendant Childs interrogated Ramon Ward at DPD headquarters on April 20, 1994.

**Response:** In response to the allegations contained in paragraph 33, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

34.    Ramon Ward told Defendant Childs that he wanted a lawyer and did not want to talk to her.

**Response:** In response to the allegations contained in paragraph 34, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

35.    Defendant Childs denied Ramon Ward's request for a lawyer.

**Response:** In response to the allegations contained in paragraph 35, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

36.    During Defendant Childs' interrogation, Ramon Ward denied any involvement in the murders of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 36, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

37.    Ramon Ward provided Defendant Childs with a signed, written statement that he did not commit the murders of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 37, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

38.    During Defendant Childs' interrogation, Defendant Collins and DPD Lieutenant William Rice restrained Ramon Ward and used phone books to beat Mr. Ward below the neck.

**Response:** In response to the allegations contained in paragraph 38, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

39.    After Defendant Childs' interrogation, unknown DPD officers took Ramon Ward to a cell in the 9th floor lockup of DPD headquarters.

**Response:** In response to the allegations contained in paragraph 39, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

40.    Joe Twilley ("Twilley") and Oliver Cowan ("Cowan") also were being held in the 9th floor lockup of DPD headquarters on April 20, 1994.

**Response:** In response to the allegations contained in paragraph 40, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

41.    Twilley and Cowan were violent felons.

**Response:** In response to the allegations contained in paragraph 41, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

42.    Twilley and Cowan were trustees, who were able to leave their cells and move freely around the 9th floor lockup of DPD headquarters.

**Response:** In response to the allegations contained in paragraph 42, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

43.    The WCPO and/or the DPD placed Twilley and Cowan in the 9th floor lockup of DPD headquarters, acting as agents of the WCPO and/or the DPD, for the purpose of obtaining false confessions from their fellow inmates in exchange for valuable incentives such as deals in their criminal cases, conjugal visits, drugs, and alcohol, as will be set forth in detail below.

**Response:** To the extent the allegations contained in paragraph 43 pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.

44.    The WCPO and/or the DPD allowed Twilley and Cowan free access to other inmates for the purpose of obtaining the false confessions.

**Response:** To the extent the allegations contained in paragraph 44 pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.

45.    The WCPO and/or the DPD failed to supervise Twilley and Cowan as they obtained false confessions from other inmates.

**Response:** To the extent the allegations contained in paragraph 45 pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.

46.    The WCPO and/or the DPD did not care how Twilley and Cowan obtained false confessions from other inmates.

**Response:** To the extent the allegations contained in paragraph 46 pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.

47.    The WCPO and/or the DPD gave Twilley and Cowan drugs and alcohol.

**Response:** To the extent the allegations contained in paragraph 47 pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.

48.    The WCPO and/or the DPD failed to screen Twilley and Cowan for weapons.

**Response:** To the extent the allegations contained in paragraph 48 pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.

49.    Ramon Ward had never met Twilley or Cowan prior to April 20, 1994.

**Response:** In response to the allegations contained in paragraph 49, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

50.    On April 20, 1994, Twilley came to Ramon Ward's cell and tried to engage Mr. Ward in conversation.

**Response:** In response to the allegations contained in paragraph 50, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

51.    Ramon Ward refused to engage Twilley in conversation and Twilley left Mr. Ward's cell.

**Response:** In response to the allegations contained in paragraph 51, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

52.     Approximately 30-45 minutes later, Cowan came to Ramon Ward's cell, threatened Mr. Ward, and sexually assaulted Mr. Ward while holding a makeshift glass knife to Mr. Ward's neck.

**Response:** In response to the allegations contained in paragraph 52, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

53.     No one from the WCPO or the DPD prevented Cowan's sexual assault of Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 53 pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.

54.     Ramon Ward never told Twilley or Cowan that he murdered Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 54, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

55.     On April 21, 1994, Defendant Childs interrogated Ramon Ward for a second time.

**Response:** In response to the allegations contained in paragraph 56, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

56.     Defendant Childs claimed that Ramon Ward during the April 21, 1994 interrogation admitted to killing Cornell and Gilliam, and then denied killing them. 57.   Ramon Ward never told Defendant Childs that he killed Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 56, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

57.     Ramon Ward never told Defendant Childs that he killed Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 57, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

58.     The criminal proceedings against Ramon Ward were in the State of Michigan Recorders Court for the City of Detroit and were captioned People of the State of Michigan vs. Ramon Ward, Recorders Court Number 94-4942.

**Response:** In response to the allegations contained in paragraph 58, Defendant admits the allegations upon information and belief.

59.  A felony complaint was issued against Ramon Ward on April 23, 1994.

**Response:** In response to the allegations contained in paragraph 59, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

60.  Defendant Childs was the complaining witness for the felony complaint.

**Response:** In response to the allegations contained in paragraph 60, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

61.  Defendant Maynard signed the felony complaint.

**Response:** In response to the allegations contained in paragraph 61, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

62.  Ramon Ward was arraigned on April 25, 1994 and Mr. Ward pleaded not guilty.

**Response:** In response to the allegations contained in paragraph 62, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

63.    There was a Preliminary Examination Hearing in the criminal proceedings against Ramon Ward on May 5, 1994.

**Response:** In response to the allegations contained in paragraph 63, Defendant responds, upon information and belief, admitted.

64.    Defendant Westveld appeared for the WCPO at the Preliminary Examination Hearing.

**Response:** In response to the allegations contained in paragraph 64, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

65.    Defendant Westveld called Twilley to testify at the Preliminary Examination Hearing.

**Response:** In response to the allegations contained in paragraph 65, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

66.    Twilley falsely testified at the Preliminary Examination Hearing that

**Response:** In response to the allegations contained in paragraph 66, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

67.   Twilley falsely testified at the Preliminary Examination Hearing that he only once previously provided testimony in a criminal case against a defendant.

**Response:** In response to the allegations contained in paragraph 67, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

68.   Twilley falsely testified at the Preliminary Examination Hearing that he was not promised anything by the WCPO or the DPD in exchange for his testimony.

**Response:** In response to the allegations contained in paragraph 68, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

69.   Twilley admitted during the Preliminary Examination Hearing that he knew Defendant Childs and Defendant Collins.

**Response:** In response to the allegations contained in paragraph 69, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

70.    Cowan falsely testified at the Preliminary Examination Hearing that Ramon Ward confessed to killing Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 70, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

71.    Cowan falsely testified at the Preliminary Examination Hearing that he had only once or twice previously provided information about a criminal defendant.

**Response:** In response to the allegations contained in paragraph 71, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

72.    Cowan falsely testified at the Preliminary Examination Hearing that he never received a benefit for providing information about a criminal defendant.

**Response:** In response to the allegations contained in paragraph 72, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

73.    At the conclusion of the Preliminary Examination Hearing, the court bound Ramon Ward over for trial for the murder of Cornell and Gilliam.

**Response:** In response to the allegations contained in this paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

74.     Defendant Westveld never corrected Twilley and Cowan's false testimony during the Preliminary Examination Hearing.

**Response:** In response to the allegations contained in paragraph 74, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

75.     No one from the WCPO or the DPD ever corrected Twilley and Cowan's false testimony from the Preliminary Examination Hearing.

**Response:** In response to the allegations contained in paragraph 75, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

76.     On July 8, 1994, the State of Michigan Recorders Court for the City of Detroit held a hearing out of public view regarding Cowan acting as an informant for the WCPO and/or the DPD.

**Response:** In response to the allegations contained in paragraph 76, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

77.     William Heaphy ("Heaphy") appeared for the WCPO at the hearing.

**Response:** In response to the allegations contained in this paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

78.     Heaphy agreed that the hearing should be conducted out of public view.

**Response:** In response to the allegations contained in paragraph 78, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

79.     During the hearing, DPD Sergeant William Peterson ("Peterson") testified that Cowan helped with the murder case against Ramon Ward, which would have been unsolved forever without Cowan's help.

**Response:** In response to the allegations contained in paragraph 79, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

80.     During the hearing, Peterson testified that there were six people incarcerated for murder who would not be without Cowan's help.

**Response:** In response to the allegations contained in paragraph 80, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

81.    During the hearing, Peterson testified that he expected Cowan's help with criminal cases in the future.

**Response:**  In response to the allegations contained in paragraph 81, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

82.    At the conclusion of the hearing, the court acknowledged that Cowan could be sentenced for five to fifteen years in his criminal case, but the court instead sentenced Cowan to one year of probation and one year in the William Dickerson Detention Facility on the condition of Cowan's continued assistance in criminal cases.

**Response:**  In response to the allegations contained in paragraph 82, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

83.    Heaphy did not object to Cowan's sentencing.

**Response:**  In response to the allegations contained in paragraph 83, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

84.    On July 27, 1994, the State of Michigan Recorders Court for the County of Wayne held a hearing out of public view regarding Twilley acting as an informant for the WCPO and/or the DPD.

**Response:** In response to the allegations contained in paragraph 84, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

85.    Rosemary Gordon ("Gordon") appeared for the WCPO at the hearing.

**Response:** In response to the allegations contained in paragraph 85, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

86.    Gordon agreed that the hearing should be conducted out of public view.

**Response:** In response to the allegations contained in paragraph 86, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

87.    During the hearing, Defendant Collins testified that Twilley had testified in at least 20 homicide cases.

**Response:** In response to the allegations contained in paragraph 87, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

88.    During the hearing, Defendant Collins testified that Twilley had assisted with numerous homicide investigations.

**Response:** In response to the allegations contained in paragraph 88, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

89. During the hearing, Defendant Collins testified that there were several homicide cases that could not have been prosecuted with Twilley's testimony, including a recent homicide case.

**Response:** In response to the allegations contained in paragraph 89, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

90. During the hearing, Gordon stated that Twilley had been extremely helpful to WCPO prosecutor Thomas Beadle ("Beadle") in an arson/homicide case.

**Response:** In response to the allegations contained in paragraph 90, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

91. During the hearing, Gordon stated that Beadle supported consideration for Twilley.

**Response:** In response to the allegations contained in paragraph 91, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

92.     During the hearing, Gordon stated that she learned from other people who worked for the WCPO that Twilley had come to court to testify on numerous occasions.

**Response:** In response to the allegations in paragraph 92, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

93.     On July 29, 1994, the Recorders Court for Defendant County held a sentencing hearing for Twilley.

**Response:** In response to the allegations contained in paragraph 93, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

94.     Michael J. King ("King") appeared for the WCPO at the hearing.

**Response:** In response to the allegations contained in paragraph 94, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

95.     During the hearing, the court re-sentenced Twilley to less than five years and ordered his immediate release so that he did not have to return to prison.

**Response:** In response to the allegations contained in paragraph 95, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

96.    King did not object to Twilley's re-sentencing and his release from prison.

**Response:** In response to the allegations contained in paragraph 96, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

97.    On September 2, 1994, there was an Evidentiary Hearing in the criminal proceedings against Ramon Ward.

**Response:** In response to the allegations contained in paragraph 97, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

98.    Defendant Westveld appeared for the WCPO at the Evidentiary Hearing.

**Response:** In response to the allegations in paragraph 98, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

99.    During the hearing, Defendant Childs testified that Ramon Ward was arrested for the purpose of investigating the murders of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 99, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

100.    During the hearing Defendant Childs testified that the only information she had for the arrest of Ramon Ward was that Jimmie Lee Stancil ("Stancil") implicated Mr. Ward in the murders of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 100, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

101.    When Stancil made the statement to Defendant Childs implicating Ramon Ward in the murders of Cornell and Gilliam, Stancil was in DPD custody and was a suspect in the murders of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 101, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

102. During the Evidentiary Hearing, Defendant Westveld never informed the Court or Ramon Ward that Twilley and Cowan had provided false testimony during the Preliminary Examination Hearing.

**Response:** In response to the allegations contained in paragraph 102, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

103. During the Evidentiary Hearing, Defendant Westveld never informed the Court or Ramon Ward that Twilley and Cowan had received significant sentence reductions in their criminal cases in exchange for their testimony against criminal defendants including Mr. Ward.

**Response:** In response to the allegations contained in paragraph 103, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

104. No one from the WCPO or the DPD ever informed the Court or Ramon Ward that Twilley and Cowan had received significant sentence reductions in their criminal cases in exchange for their testimony against criminal defendants including Mr. Ward.

**Response:** In response to the allegations contained in paragraph 104, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

105.   The trial in the criminal proceedings against Ramon Ward began on January 24, 1995 and ended on January 26, 1995.

**Response:**  In response to the allegations contained in paragraph 105, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

106.   Defendant Agacinski appeared for the WCPO at the trial.

**Response:**  In response to the allegations contained in paragraph 106, Defendant responds, upon information and belief, admitted.

107.   During the trial, witness Lenora Butchee ("Butchee") testified that the DPD had arrested her for the murders of Cornell and Gilliam prior to arresting Ramon Ward and his brother.

**Response:**  In response to the allegations in paragraph 107, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

108.   Defendant Agacinski called Twilley to testify at the trial.

**Response:**  In response to the allegations contained in paragraph 108, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

109.   Twilley falsely testified at trial that Ramon Ward told him that he killed Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 109, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

110. Twilley testified at trial that he gave a verbal statement to Defendant Childs implicating Ramon Ward in the murders of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 110, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

111. Twilley testified at trial that he gave a written statement to Defendant Maynard implicating Ramon Ward in the murders of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 111, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

112. Twilley falsely testified at trial that he received no deal for his statements and testimony against Ramon Ward.

**Response:** In response to the allegations contained in paragraph 112, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

113.   During the trial, Defendant Agacinski read to the jury Cowan's false testimony from the Preliminary Examination Hearing because Cowan had died prior to the trial.

**Response:**  In response to paragraph 113, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

114.   Defendant Childs testified at trial that Defendant Collins was in charge of the investigation into the murders of Cornell and Gilliam.

**Response:**  In response to the allegations contained in paragraph 114, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

115.   Defendant Childs testified at trial that she used the Constitutional Rights Certificate of Notification Form to advise Ramon Ward of his constitutional rights.

**Response:**  In response to the allegations contained in paragraph 115, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

116. Defendant Childs testified at trial that the spot on the Constitutional Rights Certificate of Notification Form to indicate that Ramon

Ward was literate, understood his constitutional rights, and agreed to make a voluntary statement was not signed or checked.

**Response:** In response to the allegations contained in paragraph 116, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

117. Defendant Childs testified at trial that Ramon Ward was merely a suspect in the murders of Cornell and Gilliam when Mr. Ward was arrested.

**Response:** In response to the allegations contained in paragraph 117, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

118. Stancil testified at trial that his prior statement to Defendant Childs about Ramon Ward admitting to the murders of Cornell and Gilliam was untrue.

**Response:** In response to the allegations contained in paragraph 118, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

119. There was no evidence introduced at the trial linking Ramon Ward to the murders of Cornell and Gilliam, other than the false witness testimony.

**Response:** The allegations contained in paragraph 119 are denied as untrue in the form and manner alleged and in fact.

120.   At the conclusion of the trial, the jury found Ramon Ward guilty of the murders of Cornell and Gilliam.

**Response:**  In response to the allegations contained in paragraph 120, upon information and belief, Defendant admits same.

121.   During the trial, Defendant Agacinski never informed the Court or Ramon Ward that Twilley had provided false testimony at trial or that Cowan's Preliminary Examination Hearing testimony was false.

**Response**   In response to the allegations contained in paragraph 121, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

122.   No one from the WCPO or the DPD ever informed the Court or Ramon Ward that Twilley had provided false testimony at trial or that Cowan's Preliminary Examination Hearing testimony was false.

**Response:**  In response to the allegations contained in paragraph 122, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

123.   During the trial, Defendant Agacinski never informed the Court or Ramon Ward that Twilley and Cowan had received significant sentence reductions in their criminal cases in exchange for their testimony against criminal defendants including Mr. Ward.

**Response:** In response to the allegations contained in paragraph 123, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

124. No one from the WCPO or the DPD ever informed the Court or Ramon Ward that Twilley and Cowan had received significant sentence reductions in their criminal cases in exchange for their testimony against criminal defendants including Mr. Ward.

**Response:** In response to the allegations contained in paragraph 124, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

125. In 1995, Defendant Agacinski was the Deputy Chief Assistant Prosecutor for the WCPO.

**Response:** In response to the allegations contained in paragraph 125, Defendant responds, upon information and belief, admitted.

126. In early 1995, several attorneys for criminal defendants expressed concerns to Defendant Agacinski about the practice of placing inmate informants in the DPD headquarters 9th floor lockup to obtain confessions from their fellow inmates.

**Response:**  In response to the allegations contained in paragraph 126, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

127.   In response to the concerns expressed by the attorneys, Defendant Agacinski wrote a memorandum to WCPO Chief of Operations Richard Padzieski ("Padzieski") dated February 8, 1995.

**Response:**  In response to the allegations contained in paragraph 127, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

128.   In the memorandum, Defendant Agacinski stated that he had been told that inmate informants lie about overhearing confessions and/or fabricate confessions to receive deals or favors promised to them.

**Response:**  In response to the allegations contained in paragraph 128, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

129.   In the memorandum, Defendant Agacinski identified Twilley and Cowan as inmate informants who testified to fellow inmate confessions in several criminal cases.

**Response:** In response to the allegations contained in paragraph 129, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

130.   In the memorandum, Defendant Agacinski stated that Twilley and Cowan obtained a confession in a criminal case Defendant Agacinski had tried the prior month, which likely was a reference to the Ramon Ward criminal case.

**Response:** In response to the allegations contained in paragraph 130, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

131.   In the memorandum, Defendant Agacinski also identified Solomon Tolbert ("Tolbert") and John Hewitt-El ("Hewitt-El") as individuals who acted as inmate informants.

**Response:** In response to the allegations contained in paragraph 131, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

132.   Defendant Agacinski never provided the memorandum to the Court in the criminal proceedings against Ramon Ward or to Mr. Ward.

**Response:** In response to the allegations contained in paragraph 132, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

133.   No one from the WCPO ever provided the memorandum to the Court in the criminal proceedings against Ramon Ward or to Mr. Ward.

**Response:**  In response to the allegations contained in paragraph 133, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

134.   On February 16, 1995, there was a Sentencing Hearing in the criminal proceedings against Ramon Ward.

**Response:**  In response to the allegations contained in paragraph 134, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

135.   Defendant Agacinski appeared for the WCPO at the Sentencing Hearing.

**Response:**  In response to the allegations contained in paragraph 135, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

136.   During the Sentencing Hearing, Ramon Ward maintained his innocence and expressed his hope that the real killers of Cornell and Gilliam would be brought to justice.

**Response:**  In response to the allegations contained in paragraph 136, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

137.   At the conclusion of the Sentencing Hearing, the Court sentenced Ramon Ward to life without parole for the first murder charge, 40 to 60 years for the second murder charge, and two years for a felony firearm charge.

**Response:**  In response to the allegations contained in paragraph 137, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

138.  During the Sentencing Hearing, Defendant Agacinski never informed the Court or Ramon Ward that Twilley and Cowan had been identified as inmate informants who lie about overhearing confessions and/or fabricate confessions to receive deals or favors promised to them.

**Response:**  In response to the allegations contained in paragraph 138, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

139.   During the Sentencing Hearing, no one from the WCPO or the DPD informed the Court or Ramon Ward that Twilley and Cowan had been identified as inmate informants who lie about overhearing confessions and/or fabricate confessions to receive deals or favors promised to them.

**Response:** In response to the allegations contained in paragraph 139, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

140. In response to Defendant Agacinski's memo, WCPO Chief of Research, Training, and Appeals Timothy A. Baughman ("Baughman") also wrote a memorandum to Padzieski dated March 1, 1995.

**Response:** In response to the allegations contained in paragraph 140, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

141. In the memorandum, Baughman stated that inmate informants frequently provide false testimony of other inmates' confessions to obtain compensation for their testimony.

**Response:** In response to the allegations contained in paragraph 141, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

142. No one from the WCPO ever provided the Baughman memorandum to the Court in the criminal proceedings against Ramon Ward or to Mr. Ward.

**Response:** In response to this paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

143.   On February 19, 1999, there was a Post-Conviction Remand Hearing in the criminal proceedings against Ramon Ward to determine whether there was probable cause for the arrest of Mr. Ward.

**Response:** In response to the allegations contained in paragraph 143, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

144.   Defendant Napp appeared for the WCPO at the Post-Conviction Remand Hearing.

**Response:** In response to the allegations contained in paragraph 144, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

145.   Stancil testified during the Post-Conviction Remand Hearing.

**Response:** In response to the allegations contained in paragraph 145, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

146.   Stancil testified at the Post-Conviction Remand Harding that he was under arrest as a suspect in the murders of Cornell and Gilliam when he falsely implicated Ramon Ward in the murders.

**Response:** In response to the allegations contained in paragraph 146, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

147. Stancil testified at the Post-Conviction Remand Hearing that Defendant Childs told him that Ramon Ward had implicated Stancil in the murders of Cornell and Gilliam.

**Response:** In response to the allegations contained in paragraph 147, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

148. Defendant Childs testified during the Post-Conviction Remand Hearing.

**Response:** In response to the allegations contained in paragraph 148, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

149. Defendants Childs testified at the Post-Conviction Remand Hearing that she arrested a number of suspects in the murders of Cornell and Gilliam, including Stancil, Butchee, Ramon Ward, and Mr. Ward's brother.

**Response:** In response to the allegations contained in paragraph 149, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

150.   Defendants Childs testified at the Post-Conviction Remand Hearing that Ramon Ward was the last person she arrested for the murders of Cornell and Gilliam.

**Response:**  In response to the allegations contained in paragraph 150, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

151.   During the Post-Conviction Remand Hearing, Defendant Napp never informed the Court or Ramon Ward about Twilley and Cowan's false testimony, the deals Twilley and Cowan received for their testimony, or the Agacinski and Baughman memorandums.

**Response:**  In response to the allegations contained in paragraph 151, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

152.   On November 25, 2003, there was a Motion for Relief from Judgment Hearing in the criminal proceedings against Ramon Ward.

**Response:**  In response to the allegations contained in paragraph 152, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

153.   Defendant Napp appeared for the WCPO at the Motion for Relief from Judgment Hearing.

**Response:** In response to the allegations contained in paragraph 153, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

154.   Hewitt-El testified at the Motion for Relief from Judgment Hearing.

**Response:** In response to the allegations contained in paragraph 154, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

155.   Hewitt-El testified at the Motion for Relief from Judgment Hearing that Cowan told him that he could receive a deal in his murder case like Cowan and Twilley did if he helped in the Andre Grayson murder case.

**Response:** In response to the allegations contained in paragraph 155, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

156.   Hewitt-El testified at the Motion for Relief from Judgment Hearing that Twilley told him that the DPD gave Twilley information that Twilley could testify to in exchange for a plea deal in Twilley's criminal case.

**Response:** In response to the allegations contained in paragraph 156, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

157.   Hewitt-El testified at the Motion for Relief from Judgment Hearing that the DPD supplied him with the information that he could testify to in three different cases, but Hewitt-El took the Fifth Amendment as to whether he lied in the three cases.

**Response:**  In response to the allegations contained in paragraph 157, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

158.   Hewitt-El testified at the Motion for Relief from Judgment Hearing that the DPD provided him with conjugal visits while in the 9th floor lockup of DPD headquarters in exchange for his help in the criminal cases.

**Response:**  In response to the allegations contained in paragraph 158, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

159.   Hewitt-El testified at the Motion for Relief from Judgment Hearing that he received marijuana and alcohol while in the 9th floor lockup of DPD headquarters in exchange for his help in the criminal cases.

**Response:**  In response to the allegations contained in paragraph 159, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

160.   Defendant Collins testified at the Motion for Relief from Judgment Hearing.

**Response:**  In response to the allegations contained in paragraph 160, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

161.   Defendant Collins testified at the Motion for Relief from Judgment Hearing that Twilley provided assistance in 20 homicide cases.

**Response:**  In response to the allegations contained in paragraph 161, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

162.   During the Motion for Relief from Judgment Hearing, Defendant Napp never informed the Court or Ramon Ward about Twilley and Cowan's false testimony, the deals Twilley and Cowan received for their testimony, or the Agacinski and Baughman memorandums.

**Response:**  In response to the allegations contained in paragraph 162, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

163.   Eventually the WCPO Conviction Integrity Unit conducted a review of the criminal proceedings against Ramon Ward.

**Response:** In response to the allegations contained in paragraph 163, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

164. Following the review, the WCPO agreed that Ramon Ward's criminal convictions should be voided.

**Response:** In response to the allegations contained in paragraph 164, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

165. On February 20, 2020, the criminal proceedings against Ramon Ward terminated in Mr. Ward's favor when the Wayne County Circuit Court issued an order vacating the convictions and sentences against Mr. Ward and dismissing all charges against Mr. Ward.

**Response:** The allegations contained in paragraph 165 are denied as untrue in the form and manner alleged and in fact.

166. After 25 years and 10 months, Ramon Ward was finally released from prison.

**Response:** In response to the allegations contained in paragraph 166, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

167. The conduct of Defendant Agacinski, Defendant Westveld, Defendant Napp, Defendant Childs, Defendant Maynard, Defendant Collins, Defendant Jorgensen, Defendant Sanders, Defendant Thomas, and Defendant Unknown Employees of the Wayne County Prosecutor's Office and the Detroit Police Department, as set forth in the preceding paragraphs, was done under color of law and was within the course and scope of their employment with the WCPO and the DPD.

**Response:** In response to the allegations contained in paragraph 167, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

168. The conduct of Defendant Agacinski, Defendant Westveld, Defendant Napp, Defendant Childs, Defendant Maynard, Defendant Collins, Defendant Jorgensen, Defendant Sanders, Defendant Thomas, and Defendant Unknown Employees of the Wayne County Prosecutor's Office and the Detroit Police Department, as set forth in the preceding paragraphs, resulted in damages and injuries to Ramon Ward, including but not limited to loss of liberty, physical injury and sickness, and severe emotional pain and suffering.

**Response:** To the extent the allegations contained in paragraph 168 pertain to this Defendant and Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.

169. The conduct of Defendant Agacinski, Defendant Westveld, Defendant_Napp, Defendant Childs, Defendant Maynard, Defendant Collins, Defendant Jorgensen, Defendant Sanders, Defendant Thomas, and Defendant Unknown Employees of the Wayne County Prosecutor's Office and the Detroit Police Department, as set forth in the preceding paragraphs, was a proximate cause of Ramon Ward's damages and injuries.

**Response:** To the extent the allegations contained in paragraph 169 pertain to this Defendant and Defendants Agacinski, Westveld and Napp,  same are denied as untrue in the form and manner alleged and in fact.

170. The conduct of Defendant Agacinski, Defendant Westveld, Defendant Napp, Defendant Childs, Defendant Maynard, Defendant Collins, Defendant Jorgensen, Defendant Sanders, Defendant Thomas, and Defendant Unknown Employees of the Wayne County Prosecutor's Office and the Detroit Police Department, as set forth in the preceding paragraphs, was objectively unreasonable, intentional, purposeful, knowing, willful, wanton, and/or reckless, and was undertaken with malice and/or reckless disregard of Ramon Ward's constitutional rights.

**Response:** To the extent the allegations contained in paragraph 170 pertain to this Defendant and Defendants Agacinski, Westveld and Napp,  same are denied as untrue in the form and manner alleged and in fact.

**Facts Pertaining to Defendant County's Unconstitutional Policy and/or Custom of the WCPO Obtaining False Statements and False Testimony for Use Against Criminal Defendants and Concealing the Fact that the Statements and Testimony Were False from Courts and Criminal Defendants**

171. The policymakers for Defendant County and the WCPO are the Wayne County Executive, the Wayne County Commission, and/or the Wayne County Prosecuting Attorney.

**Response:** In response to the allegations contained in paragraph 171, same are denied as untrue in the form and manner alleged in fact and law.

172. As will be set forth below, Defendant County had/has a policy of the WCPO obtaining false statements and false testimony for use against criminal defendants.

**Response:** In response to the allegations contained in paragraph 172, same are denied as untrue in the form and manner alleged and in fact.

173. As will be set forth below, Defendant County had/has a custom of tolerance and/or acquiescence of the WCPO obtaining false statements and false testimony for use against criminal defendants.

**Response:** In response to the allegations contained in paragraph 173, same are denied as untrue in the form and manner alleged and in fact.

174. Defendant County's policymakers were/are aware of the policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants prior to and after the constitutional violations suffered by Ramon Ward, but have failed to take action to remedy the problem.

**Response:** In response to the allegations contained in paragraph 174, same are denied as untrue in the form and manner alleged and in fact.

175. As will be set forth below, Defendant County had/has a policy of the WCPO concealing the fact that the statements and testimony were false from courts and criminal defendants.

**Response:** In response to the allegations contained in paragraph 175, same are denied as untrue in the form and manner alleged and in fact.

176. As will be set forth below, Defendant County had/has a custom of tolerance and/or acquiescence of the WCPO concealing the fact that the statements and testimony were false from courts and criminal defendants.

**Response:** In response to the allegations contained in paragraph 176, same are denied as untrue in the form and manner alleged and in fact.

177. Defendant County's policymakers were/are aware of the policy and/or custom of the WCPO. concealing the fact that the statements and testimony were false from courts and criminal defendants prior to and after the

constitutional violations suffered by Ramon Ward, but have failed to take action to remedy the problem.

**Response:** In response to the allegations contained in paragraph 177, same are denied as untrue in the form and manner alleged and in fact.

178. The WCPO and the DPD had/have a pattern and practice where inmate informants were/are planted in the DPD headquarters 9th floor lockup to lie by claiming that their fellow inmates confessed to crimes.

**Response:** To the extent it pertains to this Defendant, the allegations contained in paragraph 178 are denied as untrue in the form and manner alleged and in fact.

179. The WCPO and the DPD have used these fabricated confessions against criminal defendants to bolster weak cases, such as the case against Ramon Ward.

**Response:** To the extent it pertains to this Defendant, the allegations contained in paragraph 179 are denied as untrue in the form and manner alleged and in fact.

180. The WCPO and the DPD have used these fabricated confessions to obtain criminal convictions in cases where the conviction could not have been obtained without the fabricated confessions, such as the case against Ramon Ward.

**Response:** To the extent it pertains to this Defendant, the allegations contained in paragraph 180 are denied as untrue in the form and manner alleged and in fact.

181.   The WCPO and the DPD did not use these fabricated confessions for the purpose of bringing criminal offenders to justice, but instead to obtain criminal convictions regardless of innocence, such as the case against Ramon Ward.

**Response:** To the extent it pertains to this Defendant, the allegations contained in paragraph 181 are denied as untrue in the form and manner alleged and in fact.

182.   The WCPO called the inmate informants to falsely testify about the fabricated confessions at the criminal trials of their fellow inmates, such as the case against Ramon Ward.

**Response:** To the extent it pertains to this Defendant, the allegations contained in paragraph 182 are denied as untrue in the form and manner alleged and in fact.

183.   The WCPO and the DPD concealed the fact that the confessions were fabricated from courts and criminal defendants, such as the case against Ramon Ward.

**Response:** To the extent it pertains to this Defendant, the allegations contained in paragraph 183 are denied as untrue in the form and manner alleged and in fact.

184. The WCPO and/or the DPD provided favors and/or lenient treatment to the inmate informants in exchange for the informants fabricating confessions from their fellow inmates and/or for falsely testifying to the fabricated confessions.

**Response:** To the extent it pertains to this Defendant, the allegations contained in paragraph 184 are denied as untrue in the form and manner alleged and in fact.

185. Inmate informants housed at the DPD headquarters 9th floor lockup received favors not available at the jail or to non-informants at the lockup in exchange for the informants' false statements and/or false testimony.

**Response:** In response to the allegations contained in paragraph 185, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

186. Inmate informants have been able to have outside visitors bring them food and drugs.

**Response:** In response to the allegations contained in paragraph 186, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

187. Inmate informants have been able to invite guests to the DPD headquarters for conjugal visits.

**Response:** In response to the allegations contained in paragraph 187, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

188. Twilley is an example of an inmate informant to whom the WCPO and/or the DPD gave leniency in exchange for fabricated inmate confessions.

**Response:** To the extent it pertains to this Defendant, the allegations contained in paragraph 188 are denied as untrue in the form and manner alleged and in fact.

189. Twilley provided false statements and/or false testimony in approximately 20 homicide cases prosecuted by the WCPO and the DPD.

**Response:** In response to the allegations contained in paragraph 189, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

190.   In exchange for acting as an inmate informant, the WCPO and the DPD agreed that Twilley's criminal sentence of 12-25 years should be reduced to less than five years and that Twilley be released from custody.

**Response:**  To the extent the allegations contained in paragraph 190, pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, contained in this paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

191.   Another example of inmate informants to whom the WCPO and/or the DPD gave leniency in exchange for fabricated inmate confessions is Cowan.

**Response:**  To the extent the allegations contained in paragraph 191, pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, contained in this paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

192.   Cowan falsely testified in six murder cases prosecuted by the WCPO and the DPD.

**Response:**  In response to the allegations contained in paragraph 192, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

193.   In exchange for acting as an inmate informant, the WCPO and the DPD agreed that Cowan's possible criminal sentence of 5-15 years be limited to only one year in jail and one year of probation.

**Response:** To the extent the allegations contained in paragraph 193, pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, contained in this paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

194.   Edward Chico Allen ("Allen") is another inmate informant for the WCPO and/or the DPD.

**Response:**  In response to the allegations contained in paragraph 194, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

195.   The WCPO and/or the DPD provided Allen with immunity from prosecution, sexual favors, drugs, food, and/or money in exchange for Allen's false statements and false testimony.

**Response:** To the extent the allegations contained in paragraph 195 pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without

knowledge or information sufficient to form a belief as to the truth of those allegations and leaves Plaintiff to his proofs.

196.   Allen provided false statements and false testimony in the murder case against Larry Smith and numerous other murder cases for the WCPO and/or the DPD.

**Response:**  In response to the allegations contained in paragraph 196, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

197.   Allen was shown police reports so that he could falsely state and testify that his fellow inmates confessed to the information contained in the police reports.

**Response:** To the extent the allegations contained in paragraph 197, pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.

198.   Another example of inmate informants to whom the WCPO and/or the DPD gave leniency in exchange for inmate confessions is Hewitt-El.

**Response:** To the extent the allegations contained in paragraph 198, pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, contained in this

paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

199.   Hewitt-El falsely testified in three or four murder cases prosecuted by the WCPO and the DPD.

**Response:** To the extent the allegations contained in paragraph 199, pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, contained in this paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

200.   On September 6, 1995, attorney William Daniel ("Daniel") sent a letter to WCPO Chief Prosecuting Attorney John O'Hair ("O'Hair") about Hewitt El's false testimony.

**Response:**  In response to the allegations contained in paragraph 200, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

201.   In the letter Daniel stated that he was the attorney for Anton Mann ("Mann") who was charged with murder by WCPO attorney Tom Dawson ("Dawson").

**Response:**  In response to the allegations contained in paragraph 201, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

202.   In the letter, Daniel stated that Dawson told him to speak to Mary O'Connell ("O'Connell") who was the attorney for Hewitt-El.

**Response:**  In response to the allegations contained in paragraph 202, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

203.   In the letter, Daniel stated that Hewitt-El testified during a Preliminary Examination Hearing that Mann had confessed to the murder when Mann and Hewitt-El were both in custody at the 9th floor lockup of DPD headquarters.

**Response:**  In response to the allegations contained in paragraph 203, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

204.   In the letter, Daniel stated that O'Connell told him that Hewitt-El recanted his testimony about Mann's admission and would take the Fifth Amendment at Mann's trial.

**Response:** In response to the allegations contained in paragraph 204, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

205.   In the letter, Daniel stated that O'Connell told him that Hewitt-El is a witness in three or four other murder cases where Hewitt-El falsely claimed that the defendants had confessed to the murders to Hewitt-El while they were in custody at the 9th floor lockup of DPD headquarters.

**Response:** In response to the allegations contained in paragraph 205, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

206.   In the letter, Daniel stated that he spoke with attorneys Robert Slameka and Ben Gorek who also represented clients whom Hewitt-El falsely testified against.

**Response:** In response to the allegations contained in paragraph 206, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

207.   Daniel concluded the letter by stating that he was seeking the WCPO's guidance and to raise concern about fabricated confessions on behalf of his client, as an officer of the court, and as a citizen of the community.

**Response:** In response to the allegations contained in paragraph 207, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

208.  In 1998, Hewitt-El wrote a letter to an individual named Islam Lacino-X.

**Response:** In response to the allegations contained in paragraph 208, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

209.   In the letter, Hewitt-El identified Twilley, Cowan, Allen Bey, and an individual named Terry as inmate informants in the 9th floor lockup at DPD headquarters.

**Response:** In response to the allegations contained in paragraph 209, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

210.   In the letter, Hewitt El stated that both the DPD and the WCPO knew about inmate informants in the 9th floor lockup at DPD headquarters providing false confessions in exchange for favors and deals.

**Response:** In response to the allegations contained in paragraph 210, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

211.   On June 27, 2001, Hewitt-El signed an affidavit regarding his false testimony in criminal cases.

**Response:**  In response to the allegations contained in paragraph 211, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

212.   In the affidavit, Hewitt-El stated that DPD detectives from the homicide unit promised to help him if he testified to overhearing confessions from his fellow inmates in the 9th floor lockup of DPD headquarters.

**Response:**  In response to the allegations contained in paragraph 212, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

213.   In the affidavit, Hewitt-El stated that DPD detectives from the homicide unit provided him with the information he would need to testify.

**Response:**  In response to the allegations contained in paragraph 213, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

214.   Numerous individuals have been wrongfully convicted as a result of Defendant County's widespread policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts

and criminal defendants, including but not limited to Ramon Ward and the additional examples set forth below.

**Response:** In response to the allegations contained in paragraph 214, same are denied as untrue in the form and manner alleged and in fact.

215.  Bernard Howard was wrongfully convicted of murder based upon an inmate informant's false statement that Mr. Howard's co-defendants had implicated Mr. Howard in the crime.

**Response:** In response to the allegations contained in paragraph 215, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

216.  Larry Smith was wrongfully convicted of murder based upon the false testimony from an inmate informant that Mr. Smith had confessed to the crime.

**Response:** In response to the allegations contained in paragraph 216, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

217.  Lacino Hamilton was wrongfully convicted of murder based upon the false testimony from an inmate informant that Mr. Hamilton had confessed to the crime.

**Response:** In response to the allegations contained in paragraph 217, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

218.  Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts in criminal cases and from criminal defendants was and/or is so persistent and widespread that 27 wrongfully-convicted individuals who spent a total of 415 years wrongfully imprisoned have been exonerated since 2018.

**Response:** In response to the allegations contained in paragraph 218, same are denied as untrue in the form and manner alleged and in fact.

219.  In 2020, a total of 120 wrongfully-convicted individuals were exonerated in the entire United States of America.

**Response:** In response to the allegations contained in paragraph 219, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

220. Defendant County and its policymakers had/have actual knowledge of the policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact

that the statements and testimony were false from courts and criminal defendants, yet have taken no action to remedy the problems.

**Response:** In response to the allegations contained in paragraph 220, same are denied as untrue in the form and manner alleged and in fact.

221. Defendant County and its policymakers approved the policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants, and were deliberately indifferent to the resulting constitutional violations including, but not limited to, unlawful arrests, unlawful detentions pursuant to legal process, the use of fabricated evidence at criminal trials, concealment of exculpatory evidence at criminal trials, and malicious prosecutions.

**Response:** In response to the allegations contained in paragraph 221, same are denied as untrue in the form and manner alleged and in fact.

222. Defendant County and its policymakers disregarded the known and obvious consequence of the constitutional violations that resulted from the policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants.

**Response:**  In response to the allegations contained in paragraph 222, same are denied as untrue in the form and manner alleged and in fact.

223.   Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants was a proximate cause of Ramon Ward's damages and injuries.

**Response:**  In response to the allegations contained in paragraph 223, same are denied as untrue in the form and manner alleged and in fact.

224.   Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants may continue to this day.

**Response:**  In response to the allegations contained in paragraph 224, same are denied as untrue in the form and manner alleged and in fact.

225.   The Fourth Amendment to the United States Constitution provides in pertinent part that "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ... particularly describing the

place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

**Response:** The statements contained in paragraph 225 are legal conclusions as opposed to well-pled allegations of fact and, therefore, no response is required.  To the extent a response is required, Defendant denies the violation of the Fourth Amendment as it pertains to this Plaintiff.

226.  The Fourteenth Amendment to the United States Constitution provided in pertinent part that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, §1.

**Response:** The statements contained in paragraph 226 are legal conclusions as opposed to well-pled allegations of fact and, therefore, no response is required.  To the extent a response is required, Defendant denies the violation of the Fourteenth Amendment as it pertains to this Plaintiff.

227.  Title 42 of the United States Code, Section 1983 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceedings for redress." 42 U.S.C. §1983.

**Response:** The statements contained in paragraph 227 are legal conclusions as opposed to well-pled allegations of fact and, therefore, no response is required.  To the extent a response is required, Defendant denies the violation of 42 U.S.C. §1983 as it pertains to this Plaintiff.

## CAUSES OF ACTION

### COUNT I:  42 U.S.C. §1983 – False Arrest
### Against Defendant Childs, Defendant Jorgensen, Defendant Sanders
### And Defendant Thomas

228.   Defendant incorporates by reference its answers to paragraphs 1-227 of Plaintiff's Complaint as though fully set forth herein.

229.   The above-named individual Defendants arrested Ramon Ward.

**Response:**  In response to the allegations contained in paragraph 229, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

230.   There was no probable cause to arrest Ramon Ward.

**Response:**  The allegations contained in paragraph 230 are denied as untrue in the form and manner alleged and in fact.

231.   The above-named individual Defendants acted under of color of law.

**Response:**  In response to the allegations contained in paragraph 231, Defendant lacks knowledge or information sufficient to form a belief as to the truth of this allegation and leaves Plaintiff to his proofs.

232.   The arrest of Ramon Ward resulted in damages and injuries to Mr. Ward.

**Response:** To the extent the allegations contained in paragraph 232 pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.

### COUNT II:  42 U.S.C. §1983 – Unlawful Detention Pursuant to Legal Process Against Defendant Agacinski, Defendant Westveld, Defendant Napp, Defendant Childs, Defendant Maynard, Defendant Collins, Defendant Jorgensen, Defendant Sanders, and Defendant Thomas

233.   Defendant incorporates by reference its answers to paragraphs 1-232 of Plaintiff's Complaint as though fully set forth herein.

234.   Ramon Ward was detained pursuant to legal process based upon evidence fabricated by the above-named individual Defendants and exculpatory evidence concealed by the above-named individual Defendants.

**Response:** To the extent the allegations contained in paragraph 234 pertain to this Defendant and/or Defendants Agacinski, Napp and Westveld, same are denied as untrue in the form and manner alleged and in fact.

235.   There was neither probable cause nor reasonable suspicion to detain Ramon Ward.

**Response:** The allegations contained in paragraph 235 are denied as untrue in the form and manner alleged and in fact.

236.   The above-named individual Defendants acted under of color of law.

**Response:** In response to the allegations contained in paragraph 236, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

237.   The unlawful detention of Ramon Ward resulted in damages and injuries to Mr. Ward.

**Response:** To the extent the allegation contained in paragraph 237 pertains to this Defendant,  same are denied as untrue in the form and manner alleged and in fact.

238.   The unlawful detention of Ramon Ward was undertaken pursuant to Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants, as set forth above.

**Response:** In response to the allegations contained in paragraph 238, same are denied as untrue in the form and manner alleged and in fact.

<u>**COUNT III:  42 U.S.C. §1983 – Due Process/Fair Trial:**</u>
<u>**Fabrication of Evidence and Suppression of Evidence**</u>
<u>**Against Defendant Agacinski, Defendant Westveld, Defendant Napp,**</u>
<u>**Defendant Childs, Defendant Maynard, Defendant Collins, Defendant**</u>
<u>**Jorgensen, Defendant Sanders, and Defendant Thomas**</u>

239.   Defendant incorporates by reference its answers to paragraphs 1-238 of Plaintiff's Complaint as though fully set forth herein.

240. The above-named individual Defendants knowingly fabricated evidence that was used against Ramon Ward at his criminal trial.

**Response:** To the extent the allegations contained in paragraph 240 pertain to this Defendant and Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.   As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

241. The evidence fabricated by the above-named individual Defendants affected the decision of the jury which convicted Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 241 pertain to this Defendant and Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.   As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

242. The above-named individual Defendants suppressed evidence favorable to Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 242 pertain to this Defendant and Defendants Agacinski, Westveld and Napp, same

are denied as untrue in the form and manner alleged and in fact.   As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

243.   The suppressed evidence was material to the guilt and punishment of Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 243 pertain to this Defendant and Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.   As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

244.   The above-named individual Defendants acted under color of law.

**Response:**  The allegations contained in paragraph 244 do not pertain to this Defendant and, therefore, no response is required.  To the extent a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

245.   The fabrication of evidence and suppression of evidence by the abovenamed individual Defendants resulted in damages and injuries to Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 245 pertain to this Defendant and Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.    As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

246. The fabrication of evidence against Ramon Ward and the suppression of evidence favorable to Mr. Ward was undertaken pursuant to Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants, as set forth above.

**Response:**  In response to the allegations contained in paragraph 246, same are denied as untrue in the form and manner alleged and in fact.

### COUNT IV:  42 U.S.C. §1983 – Malicious Prosecution
### Against Defendant Agacinski, Defendant Westveld, Defendant Napp, Defendant Childs, Defendant Maynard, Defendant Collins, Defendant Jorgensen, Defendant Sanders, and Defendant Thomas

247.   Defendant incorporates by reference its answers to paragraphs 1-246 of Plaintiff's Complaint as though fully set forth herein.

248.   A criminal proceeding was initiated against Ramon Ward and the above-named individual Defendants made, influenced, and/or participated in the decision to prosecute.

**Response:**  To the extent it pertains to this Defendant, the allegations contained in paragraph 248 are denied as untrue in the form and manner alleged and in fact.

249.   There was a lack of probable cause for the criminal prosecution against Ramon Ward.

**Response:**  In response to the allegations contained in paragraph 249, same are denied as untrue in the form and manner alleged and in fact.

250.   As a consequence of the legal proceeding, Ramon Ward suffered a deprivation of liberty apart from the initial seizure.

**Response:**  In response to the allegations contained in paragraph 250, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and leave Plaintiff to his proofs.

251.   The criminal proceedings against Ramon Ward have been resolved in Mr. Ward's favor.

**Response:**  In response to the allegations contained in paragraph 251, same are denied as untrue in the form and manner alleged and in fact.

252. The malicious prosecution by the above-named individual Defendants resulted in damages and injuries to Ramon Ward.

**Response:** In response to the allegations contained in paragraph 252, same are denied as untrue in the form and manner alleged and in fact.

253. The malicious prosecution of Ramon Ward was undertaken pursuant to Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants, as set forth above.

**Response:** In response to the allegations contained in paragraph 253, same are denied as untrue in the form and manner alleged and in fact.

### COUNT V:  42 U.S.C. §1983 – Conspiracy
**Against Defendant Agacinski, Defendant Westveld, Defendant Napp
Defendant Childs, Defendant Maynard, Defendant Collins, Defendant
Jorgensen, Defendant Sanders, and Defendant Thomas**

254.   Defendant incorporates by reference its answers to paragraphs 1-253 Plaintiff's Complaint as though fully set forth herein.

255. The above-named individual Defendants had a single plan to convict Ramon Ward for the murders of Cornell and Gilliam.

**Response:** To the extent the allegations contained in paragraph 255 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp,

same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

256.  The above-named individual Defendants shared a conspiratorial objective to deprive Ramon Ward of his constitutional rights.

**Response:** To the extent the allegations contained in paragraph 256 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

257.  The above-named individual Defendants committed overt acts in furtherance of the conspiracy.

**Response:** To the extent the allegations contained in paragraph 257 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

.

258.   The above-named individual Defendants acted under color of law.

**Response:**  The allegations contained in paragraph 258 do not pertain to this Defendant and, therefore, no response is required.  To the extent a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

259.   The conspiracy to deprive Ramon Ward of his constitutional rights resulted in damages and injuries to Mr. Ward.

**Response:**  To the extent the allegations contained in paragraph 259 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

260.   The conspiracy to deprive Ramon Ward of his constitutional rights was undertaken pursuant to Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants, as set forth above.

**Response:**  In response to the allegations contained in paragraph 260, same are denied as untrue in the form and manner alleged and in fact.

<u>**COUNT VI:  42 U.S.C. §1983 – Failure to Intervene**</u>
<u>**Against Defendant Agacinski, Defendant Westveld, Defendant Napp**</u>
<u>**Defendant Childs, Defendant Maynard, Defendant Collins,**</u>
<u>**Defendant Jorgensen, Defendant Sanders, and Defendant Thomas**</u>

261.   Defendant incorporates by reference its answers to paragraphs 1-260 of Plaintiff's Complaint as though fully set forth herein.

262.   As set forth above, the above-named individual Defendants falsely arrested Ramon Ward, unlawfully detained Mr. Ward pursuant to legal process, used fabricated evidence against Mr. Ward, suppressed evidence favorable to Mr. Ward, and maliciously prosecuted Mr. Ward.

**Response:**  To the extent the allegations contained in paragraph 262 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

263.   Each above-named individual Defendants observed and/or had reason to know that Ramon Ward was falsely arrested, unlawfully detained

pursuant to legal process, had fabricated evidence used against him, had evidence favorable to him suppressed, and was maliciously prosecuted.

**Response:** To the extent the allegations contained in paragraph 263 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact. As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

264.  Each above-named individual Defendants had an opportunity to intervene in the false arrest of Ramon Ward, the unlawful detention of Mr. Ward pursuant to legal process, the use of fabricated evidence against Mr. Ward, the suppression of evidence favorable to Mr. Ward, and the malicious prosecution of Mr. Ward.

**Response:** To the extent the allegations contained in paragraph 264 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact. As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

265. Each above-named individual Defendants failed to intervene in the false arrest of Ramon Ward, the unlawful detention of Mr. Ward pursuant to legal process, the use of fabricated evidence against Mr. Ward, the suppression of evidence favorable to Mr. Ward, and the malicious prosecution of Mr. Ward.

**Response:** To the extent the allegations contained in paragraph 265 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact. As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

266. Each above-named individual Defendants acted under color of law.

**Response:** The allegations contained in paragraph 266 do not pertain to this Defendant and, therefore, no response is required. To the extent a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

267. The failure to intervene in the constitutional violations suffered by Ramon Ward resulted in damages and injuries to Mr. Ward.

**Response:** To the extent the allegations contained in paragraph 267 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact. As to the

remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

268.   The failure to intervene in the constitutional violations suffered by Ramon Ward was undertaken pursuant to Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants, as set forth above.

**Response:**  In response to the allegations contained in paragraph 268, same are denied as untrue in the form and manner alleged and in fact.

<u>**COUNT VII:  42 U.S.C. §1983 – Failure to Protect**</u>
<u>**Against Defendant Childs, Defendant Jorgensen, Defendant Sanders,**</u>
<u>**Defendant Thomas, and Defendants Unknown Employees of the Wayne**</u>
<u>**County Prosecutor's Office and the Detroit Police Department**</u>

269.   Defendant incorporates by reference its answers to paragraphs 1-268 of Plaintiff's Complaint as though fully set forth herein.

270.   As set forth above, the above-named individual Defendants failed to protect Ramon Ward from the violent sexual assault by Cowan in the 9th floor lockup of DPD headquarters.

**Response:** To the extent the allegations contained in paragraph 270 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp,

same are denied as untrue in the form and manner alleged and in fact. As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

271. As set forth above, the above-named individual Defendants acted with deliberate indifference to a substantial risk of serious harm to Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 271 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact. As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

272. Ramon Ward was incarcerated in the 9th floor lockup of DPD headquarters under conditions that posed a substantial risk of serious harm.

**Response:** In response to the allegations contained in paragraph 272, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

273.   The above-named individual Defendants knew that Ramon Ward faced a substantial risk of serious harm in the 9th floor lockup of DPD headquarters but failed to take reasonable measures to reduce the risk of harm.

**Response:**  To the extent the allegations contained in paragraph 273 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

274.   Each above-named individual Defendants acted under color of law.

**Response:**  The allegations contained in paragraph 274 do not pertain to this Defendant and, therefore, no response is required.  To the extent a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

275.   The failure to protect Ramon Ward resulted in damages and injuries to Mr. Ward.

**Response:**  The allegations contained in paragraph 275 do not pertain to this Defendant and, therefore, no response is required.  To the extent a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

## COUNT VIII:  42 U.S.C. §1983 – Policy and/or Custom of the WCPO
## Fabricating Evidence and Suppressing Evidence
## Against Defendant County

276.   Defendant incorporates by reference its answers to paragraphs 1-275 of Plaintiff's Complaint as though fully set forth herein.

277.   As set forth above, the above-named individual Defendants falsely arrested Ramon Ward, unlawfully detained Mr. Ward pursuant to legal process, used fabricated evidence against Mr. Ward, suppressed evidence favorable to Mr. Ward, and maliciously prosecuted Mr. Ward.

**Response:** To the extent the allegations contained in paragraph 277, pertain to this Defendant, same are denied as untrue in the form and manner alleged and in fact.

278.   As set forth above, Defendant County had/has a policy of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants.

**Response:** In response to the allegations contained in paragraph 278, same are denied as untrue in the form and manner alleged and in fact.

279.  As set forth above, Defendant County had/has a custom of tolerance and/or acquiescence of the WCPO obtaining false statements and

false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants.

**Response:**  In response to the allegations contained in paragraph 279, same are denied as untrue in the form and manner alleged and in fact.

280.   Defendant County made a deliberate choice to have a policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants.

**Response:**  In response to the allegations contained in paragraph 280, same are denied as untrue in the form and manner alleged and in fact.

281.   Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants was the moving force behind the false arrest of Ramon Ward, the unlawful detention of Mr. Ward pursuant to legal process, the use of fabricated evidence against Mr. Ward, the suppression of evidence favorable to Mr. Ward, and the malicious prosecution of Mr. Ward.

**Response:**  In response to the allegations contained in paragraph 281, same are denied as untrue in the form and manner alleged and in fact.

282.   Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants caused the false arrest of Ramon Ward, the unlawful detention of Mr. Ward pursuant to legal process, the use of fabricated evidence against Mr. Ward, the suppression of evidence favorable to Mr. Ward, and the malicious prosecution of Mr. Ward.

**Response:**  In response to the allegations contained in paragraph 282, same are denied as untrue in the form and manner alleged and in fact.

283.   Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants resulted in damages and injuries to Ramon Ward.

**Response:**  In response to the allegations contained in paragraph 283, same are denied as untrue in the form and manner alleged and in fact.

**COUNT IX:  Michigan State Law – False Arrest**
**Against Defendant Childs, Defendant Jorgensen, Defendant Sanders, and Defendant Thomas**

284.   Defendant incorporates by reference its answers to paragraphs 1-283 of Plaintiff's Complaint as though fully set forth herein.

285.   The above-named individual Defendants arrested Ramon Ward.

**Response:**  The allegations contained in paragraph 285 do not pertain to this Defendant and, therefore, no response is required.  To the extent a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

286.   There was no probable cause to arrest Ramon Ward.

**Response:**  The allegations contained in paragraph 286 are denied as untrue in the form and manner alleged and in fact.

287.   The arrest of Ramon Ward resulted in damages and injuries to Mr. Ward.

**Response:**  The allegations contained in paragraph 287 do not pertain to this Defendant and, therefore, no response is required.  To the extent a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

### COUNT X:  Michigan State Law – Malicious Prosecution
### Against Defendant Agacinski, Defendant Westveld, Defendant Napp Defendant Childs, Defendant Maynard, Defendant Collins, Defendant Jorgensen, Defendant Sanders, and Defendant Thomas

288.   Defendant incorporates by reference its answers to paragraphs 1-287 Plaintiff's Complaint as though fully set forth herein.

289.   The  above-named  individual  Defendants  caused,  initiated, instituted, and/or continued a criminal prosecution against Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 289 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

290.   The criminal proceedings against Ramon Ward terminated in Mr. Ward's favor.

**Response:** The allegations contained in paragraph 290 are denied as untrue in the form and manner alleged and in fact.

291.   There was no probable cause for causing, initiating, instituting, and/or continuing the criminal prosecution and/or proceeding against Ramon Ward.

**Response:** The allegations contained in paragraph 291 are denied as untrue in the form and manner alleged and in fact.

292.   The above-named individual Defendants caused, initiated, instituted, and/or continued the criminal prosecution and/or proceeding against Ramon Ward with malice and/or a purpose other than that of bringing Mr. Ward to justice.

**Response:** To the extent the allegations contained in paragraph 292 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact. As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

293. Ramon Ward suffered a deprivation of liberty as a result of the criminal prosecution and/or proceeding.

**Response:** To the extent the allegations contained in paragraph 293 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact. As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

294. Ramon Ward suffered a special injury in the form of a seizure of his person.

**Response:** To the extent the allegations contained in paragraph 294 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact. As to the remainder of the allegations, Defendant is without knowledge or information

sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

295.   The above-named individual Defendants are liable to Ramon Ward for treble damages pursuant to Michigan Compiled Laws Annotated 600.2907.

**Response:** To the extent the allegations contained in paragraph 295 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

### COUNT XI: Michigan State Law – Abuse of Process
### Against Defendant Agacinski, Defendant Westveld, Defendant Napp, Defendant Childs, Defendant Maynard, Defendant Collins, Defendant Jorgensen, Defendant Sanders, and Defendant Thomas

296.   Defendant incorporates by reference its answers to paragraphs 1-295 of Plaintiff's Complaint as though fully set forth herein.

297.   The above-named individual Defendants acted with an ulterior purpose in the criminal prosecution and/or proceeding against Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 297 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the

remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

298.   The above-named individual Defendants acted improperly and/or irregularly in the use of process during the criminal prosecution and/or proceeding against Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 298 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

299.   The above-named individual Defendants' abuse of process resulted in damages and injuries to Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 299 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

**COUNT XII:  Michigan State Law – Intentional Infliction of Emotional Distress Against Defendant Agacinski, Defendant Westveld, Defendant Napp Defendant Childs, Defendant Maynard, Defendant Collins, Defendant Jorgensen, Defendant Sanders, and Defendant Thomas**

300.   Defendant incorporates by reference paragraphs 1-299 its answers to Plaintiff's Complaint as though fully set forth herein.

301.   The above-named individual Defendants engaged in extreme and outrageous conduct.

**Response:** To the extent the allegations contained in paragraph 301 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

302.   The above-named individual Defendants acted with intent and/or recklessness.

**Response:** To the extent the allegations contained in paragraph 302 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information

sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

303.   The above-named individual Defendants' conduct caused severe emotional distress to Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 303 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp, same are denied as untrue in the form and manner alleged and in fact.  As to the remainder of the allegations, Defendant is without knowledge or information sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

**COUNT XIII:  Michigan State Law – Gross Negligence**
**Against Defendant Agacinski, Defendant Westveld, Defendant Napp,**
**Defendant Childs, Defendant Maynard, Defendant Collins, Defendant**
**Jorgensen, Defendant Sanders, and Defendant Thomas**

304.   Defendant incorporates by reference its answers to paragraphs 1-303 Plaintiff's Complaint as though fully set forth herein.

305.   As set forth above, the above-named individual Defendants failed to protect Ramon Ward from the violent sexual assault by Cowan in the 9th floor lockup of DPD headquarters.

**Response:** To the extent the allegations contained in paragraph 305 pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp,

same are denied as untrue in the form and manner alleged and in fact.  As to the

remainder of the allegations, Defendant is without knowledge or information

sufficient to form a belief as to the truth of same and leaves Plaintiff to his

proofs.

306.  As set forth above, the conduct of the above-named individual

Defendants was so reckless that it demonstrated a substantial lack of concern

for whether injury resulted to Ramon Ward.

**Response:** To the extent the allegations contained in paragraph 306

pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp,

same are denied as untrue in the form and manner alleged and in fact.  As to the

remainder of the allegations, Defendant is without knowledge or information

sufficient to form a belief as to the truth of same and leaves Plaintiff to his

proofs.

307.  The conduct of the above-named individual Defendants was the

proximate cause of Ramon Ward's injuries and damages.

**Response:** To the extent the allegations contained in paragraph 307

pertain to this Defendant and/or Defendants Agacinski, Westveld and Napp,

same are denied as untrue in the form and manner alleged and in fact.  As to the

remainder of the allegations, Defendant is without knowledge or information

sufficient to form a belief as to the truth of same and leaves Plaintiff to his proofs.

WHEREFORE, Defendant **WAYNE COUNTY** respectfully requests that this Honorable Court enter an Order for Judgment of No Cause for Action in its favor, with costs and attorney fees to be taxed.

Respectfully submitted,

**PLUNKETT COONEY**

By ***/s/Audrey J. Forbush***
    AUDREY J. FORBUSH  (P41744)
    Attorney for Defendant
    Wayne County
    Plaza One Financial Center
    111 E. Court Street – Suite 1B
    Flint, MI  48502
    (810) 342-7014
    aforbush@plunkettcooney.com

Dated:  February 17, 2022

## DEFENDANT WAYNE COUNTY'S AFFIRMATIVE DEFENSES

Now comes Defendant, Wayne County, by and through its attorneys, and for its Affirmative Defenses says as follows:

1.    Plaintiff's claim fails to state a claim upon which relief can be granted for municipal liability claims asserted under 42 U.S.C. § 1983.

2.    The applicable statutes of limitations bar the claim.

3.      The individual Defendants Agacinski, Westveld and Napp are entitled to absolute, qualified, prosecutorial and/or sovereign immunity on the claims asserted under 42 U.S.C. § 1983.

4.      The individual Defendants Agacinski, Westveld and Napp are entitled to governmental and/or prosecutorial immunity for claims asserted under state law.

5.      Plaintiff has failed to mitigate his damages.

6.      Litigating a 26 year old controversy without any prior notice of an intent to pursue civil claims violated Defendants' rights to due process as the case cannot be fairly litigated.

7.      The criminal proceedings did not terminate in Plaintiff's favor.

8.      Probable cause to charge the Plaintiff existed.

9.      Any injury suffered by Plaintiff was proximately caused by his own wrongdoing. Defendants are not the direct or proximate cause of Plaintiff's damages.

10.     Defendant is or may be entitled to a set off for any financial recovery to Plaintiff in administrative proceedings under the Michigan Wrongful Imprisonment Compensation Act, MCL 691.1751 *et. seq.*

11.     Some or all of Plaintiff's claims may be barred by the Doctrine of Collateral Estoppel.

12.     To the extent applicable, Plaintiff's claims may be barred by the Eleventh Amendment.

13.     Some or all of Plaintiff's claims are or may be barred by waiver release as Plaintiff consented to being interviewed or interrogated and knowingly opted not to have legal counsel present during Plaintiff's interview/interrogation.

14.     To the extent applicable, the Wayne County is entitled to governmental immunity.

15.     To the extent applicable, the individual Defendants are entitled to governmental immunity pursuant to MCL 691.1407 *et. seq.*

16.     At all times, the individual Defendants acted in good faith and without malice.  See *Odom v. Wayne County*.

17.     Plaintiff's Complaint may be barred in whole, or in part, by the wrongful conduct doctrine.

18.     Defendant incorporates by reference all Affirmative Defenses asserted by any other Defendant in this case to the extent they are applicable.

19.     Defendant reserves the right to amend its Affirmative Defenses as they become known as the case progresses.

Respectfully submitted,

**PLUNKETT COONEY**

By ***/s/Audrey J. Forbush***
   AUDREY J. FORBUSH  (P41744)
   Attorney for Defendant
   Wayne County
   Plaza One Financial Center
   111 E. Court Street – Suite 1B
   Flint, MI  48502
   (810) 342-7014
   aforbush@plunkettcooney.com

Dated:  February 17, 2022


**DEFENDANT WAYNE COUNTY**
**RELIANCE UPON DEMAND FOR JURY TRIAL**


     NOW COMES Defendant, WAYNE COUNTY, by and through its attorneys,

PLUNKETT COONEY, and hereby relies upon the demand for trial by jury filed

by Plaintiff in the above-entitled cause of action.

     Respectfully submitted,

     **PLUNKETT COONEY**

     By ***/s/Audrey J. Forbush***
        AUDREY J. FORBUSH  (P41744)
        Attorney for Defendant
        Wayne County
        Plaza One Financial Center
        111 E. Court Street – Suite 1B
        Flint, MI  48502
        (810) 342-7014
        aforbush@plunkettcooney.com

Dated:  February 17, 2022

**PROOF OF SERVICE**

The undersigned certifies that on February 17, 2022, a copy of the foregoing document was served upon parties of record in this matter at their stated address(es) as disclosed in the pleadings herein via:

☐ Hand delivery    ☐ Certified Mail
☐ U.S. Mail         ☐ Facsimile
☐ Email            ☒ Electronic e-file

I declare under the penalty of perjury that the foregoing statement is true to the best of my information, knowledge and belief.

_____*/s/ Bobbie Haidy*_____
Bobbie Haidy

Open.28310.20184.28168249-1