UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMON WARD,

　　　　　　　　　　　　Plaintiff,

v.

COUNTY OF WAYNE, *et al.*,

　　　　　　　　　　　　Defendants.

Case No. 21-cv-12742
Honorable Paul D. Borman
Magistrate Judge Elizabeth A. Stafford

---

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(ECF NO. 123)**

---

## I.　　Introduction

In 1995, Plaintiff Ramon Ward was convicted of murder and sentenced to life in prison without the possibility of parole.  Twenty-five years later, that conviction was vacated based on newly discovered evidence.  Ward filed this action under 42 U.S.C. § 1983, challenging his wrongful conviction.  ECF No. 1.  The Honorable Paul D. Borman referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 140.  Defendants Monica Childs, Dale Collins, Fred Jorgensen, and Tony Sanders—Detroit Police Department (DPD) officers involved with the murder investigation—move for summary judgment.  ECF

No. 123.  The Court **RECOMMENDS** that defendants' motion be **GRANTED IN PART AND DENIED IN PART.**

## II.    Background

In January 1994, Joan Gilliam and Denise Sharon Cornell were found murdered by gunshot wounds to their heads.  ECF No. 123-11, PageID.4438.  Collins was the lead investigator on the case, and Childs assisted in the investigation.  ECF No. 123-8, PageID.4322-4323.  On April 18, 1994, Childs took a statement from Jimmie Lee Stancil, Ward's cousin.  ECF No. 123-4.  Stancil stated that Gilliam had been sleeping in the basement of a house that he, Ward, and Oshea Ward (Ward's brother) rented from Lenora "Lee" Allen Butchee.  *Id.*, PageID.4189.  Stancil also said that Gilliam owed Ward money and that Ward threatened to kill her if she did not pay.  *Id.*  When Stancil learned of Gilliam and Cornell's murders, he asked Ward if he had done it.  *Id.*  Ward allegedly responded, "Yeah, I took care of that."  *Id.*

Childs took a second statement from Stancil on April 22, 1994.  ECF No. 123-5.  Stancil reported that Ward used Cornell to set up Gilliam to steal her Social Security check.  *Id.*, PageID.4193.  Ward believed that Gilliam was getting a check for $8,000.00, which he planned to steal to

fund his drug dealing operation.  *Id.*  Stancil again stated that Ward told him that he killed the victims.  *Id.*

On April 20, 1994, Childs ordered Jorgensen and Sanders to arrest Ward based on Stancil's first statement.  ECF No. 123-13, PageID.4570-4751.  Ward was advised of his *Miranda* rights, and he provided a statement.  ECF No. 123-6; ECF No. 123-7.  Ward said that he saw Gilliam and Cornell being forced out of a car and into a house by Butchee, Cherokee Marcilis, and another man he did not recognize.  ECF No. 123-7, PageID.4196.  Ward approached the house and looked through a window, where he saw Gilliam on her knees yelling, "I didn't tell the police!"  *Id.*  Ward stated that Butchee shot Gilliam and that he immediately ran from the scene.  *Id.*  Ward did not see who shot Cornell but believed that it was Marcilis.  *Id.*

Ward was brought to the ninth-floor lockup at DPD headquarters.  ECF No. 123-8, PageID.4329.  Childs claims that she spoke with Ward the next day and that he confessed to the murders.  *Id.*, PageID.4332.  Childs re-read Ward his *Miranda* rights and interviewed him.  ECF No. 123-9, PageID.4436.  Childs prepared a statement, unsigned by Ward, documenting the interview.  ECF No. 123-10.  Childs asked Ward if he

wanted to change anything about his first statement.  *Id.*  According to the

statement, Ward said,

> I lied because I didn't want it to look like cold-blooded murder.
> They wasn't nothing but two hoes.  I was just gone [sic] rob
> [Gilliam] and take her [Social Security] check but the shit got
> out of hand.  [Cornell] set [Gilliam] up for me 'cause everybody
> knew that [Gilliam] was getting a big check from [Social
> Security].

*Id.* (cleaned up).  When asked if he shot the victims, Ward responded that

he had.  *Id.*

Joe Twilley and Oliver Cowan, two inmate informants housed in the

DPD's ninth-floor lockup, also provided statements that Ward had

confessed to killing the victims.  ECF No. 123-27; ECF No. 123-28.  They

claimed that Ward told them that he planned to steal a check from Gilliam

and that he shot her and Cornell.  ECF No. 123-27; ECF No. 123-28.  Ward

maintains that Twilley's and Cowan's statements and later testimony were

fabricated.  ECF No. 129, PageID.6402-6406.

The assistant prosecuting attorney recommended issuing a warrant

for Ward's arrest.  ECF No. 123-11.  Ward's preliminary examination took

place in May 1994.  ECF No. 123-12.  Twilley, Cowan, and Stancil testified

at the hearing, and Ward was bound over for trial.  *Id.*, PageID.4458-4467,

4492-4496, 4513-4514, 4527-4528.[1]  A jury trial took place in January 1995, with Robert Agacinski as the prosecutor.  ECF No. 123-14, PageID.4603.  Agacinski presented testimony from Twilley, Stancil, Childs, and others.  *Id.*, PageID.4603-4604.  Cowan's preliminary examination testimony was read into the record, as he died before trial.  *Id.*  The jury convicted Ward on all counts, and the trial judge sentenced him to life in prison without the possibility of parole.  ECF No. 123-16, PageID.4869, 4874.

Ward appealed his conviction and sentence; the Michigan Court of Appeals ultimately affirmed, and the Michigan Supreme Court denied leave to appeal.  *See* ECF No. 123-17; ECF No. 123-18; ECF No. 123-19; ECF No. 123-20, PageID.4965-4966.  Ward also filed motions for post-judgment relief claiming that Twilley's and Cowan's testimony was fabricated, but those motions and resulting appeals were denied.  *See* ECF No. 123-20; ECF No. 123-22; ECF No. 123-23; ECF No. 123-24.  Ward later petitioned for habeas corpus relief, which was also denied.  ECF No. 123-25.

---

[1] Before trial, Ward moved to suppress the statements he made to Childs, challenging whether he made them at all, whether they were made voluntarily, the adequacy of the *Miranda* warnings, and whether probable cause supported the arrest.  ECF No. 123-13, PageID.4594-4596, 4598-4599.  The trial court denied the motion.  *Id.*, PageID.4600-4601.

In 2018, the Conviction Integrity Unit of the Wayne County Prosecutor's Office (WCPO) investigated Ward's case based on new evidence.  Ward produced an affidavit from Perrell Bradford, who stated that he witnessed Marcilis shoot Gilliam and Cornell.  ECF No. 148. Bradford said that he did not come forward earlier because his father and Ward told him to remain silent.  *Id.*  In February 2020, the trial court entered the parties' stipulated order vacating Ward's conviction and sentence.  ECF No. 123-2.

Ward brings this action under 42 U.S.C. § 1983, asserting claims of (1) false arrest, (2) unlawful detention pursuant to legal process, (3) fabrication and withholding of evidence, (4) malicious prosecution, (5) conspiracy, (6) failure to intervene, and (7) failure to protect.  ECF No. 1, PageID.34-41.[2]  And he makes state-law claims of (1) false arrest, (2) malicious prosecution, (3) abuse of process, (4) intentional infliction of emotional distress, and (5) gross negligence.  *Id.*, PageID.43-46. Defendants seek summary judgment on all counts.  ECF No. 123.

---

[2] Ward also brought a *Monell* claim against Wayne County, which is not at issue in this motion.  ECF No. 1, PageID.41-43.

### III.    Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The opposing party "may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an

affirmative showing with proper evidence in order to defeat the motion."
*Alexander v. Caresource*, 576 F.3d 551, 558 (6th Cir. 2009) (cleaned up).
"[T]he failure to present any evidence to counter a well-supported motion
for summary judgment alone is grounds for granting the motion."  *Id.*
(cleaned up).  "Conclusory statements unadorned with supporting facts are
insufficient to establish a factual dispute that will defeat summary
judgment."  *Id.* at 560.

 Ward argues several times that defendants failed to offer evidence
showing the absence of a genuine dispute of material fact.  ECF No. 129,
PageID.6389, 6400, 6407, 6411-6412.  But a moving party need not
"support its motion for summary judgment with evidence negating its
opponent's claims."  *Met. Life Ins. Co. v. Kelly*, No. 16-cv-12544, 2017 WL
3085519, at *3 (E.D. Mich. July 20, 2017).  Instead, "the movant may meet
the initial burden by pointing out to the court that the nonmoving party,
having had sufficient opportunity for discovery, has no evidence to support
an essential element of his or her case, and on which that party will bear
the burden of proof at trial."  *Id.* (cleaned up).  That is, "a motion for
summary judgment is a means by which to challenge the opposing party to
'put up or shut up' on a critical issue."  *Cox v. Ky. Dep't of Transp.*, 53 F.3d
146, 149 (6th Cir. 1995) (cleaned up).

**B.**

Defendants make a cursory argument that the Court lacks jurisdiction over the case, citing procedural defects in the state court's order vacating Ward's conviction and sentence.  ECF No. 123, PageID.4044-4045 n.1.  Defendants have waived the issue, as they failed to develop the argument with any rationale or citation to authority.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (cleaned up)).  Even so, the argument lacks merit for the reasons described in *Smith v. County of Wayne*, No. 21-12070, 2023 WL 8788944, at *11 (E.D. Mich. Dec. 19, 2023).

**C.**

Defendants next contend that collateral estoppel and res judicata preclude Ward's claims.  ECF No. 123, PageID.4046-4048.  They argue that the action raises issues previously litigated during Ward's state-court criminal proceedings and in his federal habeas proceeding.  *Id.*

Under the Full Faith and Credit Act, federal courts must give preclusive effect to state-court proceedings.  28 U.S.C. § 1738; *Allen v.*

9

*McCurry*, 449 U.S. 90, 102 (1980) ("[C]ollateral estoppel applies when § 1983 plaintiffs attempt to relitigate in federal court issues decided against them in state criminal proceedings.").  Under Michigan law, preclusion applies when a claim or issue essential to the judgment was litigated and determined by a valid and final judgment, among other requirements. *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006); *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005).

But state-court rulings in a criminal case retain no preclusive effect when the conviction has been vacated, as there is no longer a final decision on the merits.  *Peterson v. Heymes*, 931 F.3d 546, 554-55 (6th Cir. 2019).  This principle applies to rulings made in pretrial hearings, during trial, on direct appeal, and in federal habeas proceedings.  *Id.*; *Siggers v. Alex*, No. 19-CV-12521, 2021 WL 4391170, at *4-5 (E.D. Mich. Sept. 24, 2021), *rev'd on other grounds*, 2023 WL 5986603 (6th Cir. Sept. 12, 2023).  Because Ward's conviction was vacated, his claims are not precluded.

## D.

Defendants next assert that they are entitled to qualified immunity on the § 1983 claims.  ECF No. 123, PageID.4048-4050.  "Qualified immunity gives government officials breathing room to make reasonable but

10

mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (cleaned up).  The qualified immunity analysis has two steps: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Est. of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005).  Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to show that he is not entitled to it.  *Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007).

Defendants argue that Ward cannot show any constitutional violations.  The Court addresses whether Ward has presented enough evidence to support his claims of constitutional violations below.

## 1.

Defendants first contend that Ward's false arrest and unlawful detention claims are barred by the statutes of limitations.  ECF No. 123, PageID.4053-4054.  The parties dispute whether a two or three-year limitations period applies, but the Court need not resolve that issue.  Whether the claims are barred depends on when they accrued, no matter if the limitations period is two or three years.  Defendants maintain that the claims accrued when Ward became detained pursuant to legal process at

his preliminary examination in May 1994.  *Id.*, PageID.4054.  Ward

counters that they accrued in February 2020, when his conviction was

vacated.  ECF No. 129, PageID.6399.  Both sides are partially correct.

A § 1983 false arrest claim accrues at the time of the arrest or, at the

latest, when the plaintiff becomes detained pursuant to legal process, such

as at an arraignment or preliminary examination.  *Dibrell v. City of*

*Knoxville, Tenn.*, 984 F.3d 1156, 1162 (6th Cir. 2021) (citing *Wallace v.*

*Kato*, 549 U.S. 382, 397 (2007)).  Under this authority, Ward's false arrest

claim accrued when he was bound over for trial in May 1994 and is

untimely.

But Ward also challenges his continued detention following the

preliminary examination.  ECF No. 1, PageID.10-11, 35-36.  In *Manuel v.*

*City of Joliet, Ill.*, the Supreme Court held that a "post-legal-process" pretrial

detention claim was cognizable under the Fourth Amendment and

remanded the case for the Seventh Circuit to determine whether the statute

of limitations barred the claim.  580 U.S. 357, 367-68, 372-73 (2017).

Manuel, like Ward, alleged that a judge relied on fabricated evidence in

finding that probable cause supported detaining him for trial.  *Id.* at 368.

And while Manuel argued that his claim accrued when his criminal charges

were dismissed, the defendants argued that it accrued when he received legal process.  *Id.* at 371-72.

On remand, the Seventh Circuit found that Manuel's claim accrued when he was released from custody after the charges were dropped. *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 669 (7th Cir. 2018).  The court reasoned that the limitations period for an ongoing wrong commences when the wrong ends.  *Id.*  Because detention without probable cause continues throughout the detention, Manuel's claim accrued when he was released.  *Id.* at 670.  The Court also reasoned that *Heck v. Humphrey*, 512 U.S. 477 (1994), prevented Manuel from suing until the charges were set aside.  *Id.*  The Supreme Court denied certiorari.  139 S. Ct. 2777 (2019).

The Sixth Circuit has not yet ruled on this issue.  *See Dibrell*, 984 F.3d at 1163 (declining to decide the accrual date for a post-legal-process detention claim).  But the Court finds the Seventh Circuit's reasoning persuasive and concludes that Ward's unlawful detention claim accrued when he was released.  The state court vacated Ward's conviction in February 2020 and ordered his release.  ECF No. 123-2, PageID.4068. Ward filed this case in November 2021, well within the limitations period. Thus, his unlawful detention claim is timely.

Defendants assert that Ward's detention was lawful and supported by probable cause.  ECF No. 123, PageID.4051-4053.[3]  But if legal process is tainted by fabricated evidence, "and the result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights."  *Manuel*, 580 U.S. at 369 n.8.  The state court determined that there was probable cause to prosecute based on testimony from Twilley, Cowan, and Stancil.  ECF No. 123-12, PageID.4442.  As discussed below, Ward presents sufficient evidence that Twilley and Cowan testified falsely, and that Stancil's testimony could not alone support probable cause.  Thus, defendants are not entitled to summary judgment on this claim.

## 2.

The Due Process Clause is violated when the prosecution knowingly fabricates evidence.  *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006).  "A police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of his liberty in some way."  *Sanford v. Russell*, 381 F. Supp. 3d 905, 918 (E.D. Mich. 2019) (cleaned up).  A fabrication of

---

[3] Defendants inexplicably cite the elements of a state-law unlawful detention claim rather than authority governing the federal claim.  ECF No. 123, PageID.4051.

evidence claim involves two elements: (1) "a defendant knowingly fabricated evidence against a plaintiff" and (2) "there is a reasonable likelihood that the false evidence could have affected the judgment of the jury." *Mills v. Barnard*, 869 F.3d 473, 485 (6th Cir. 2017) (cleaned up). Defendants argue that Ward cannot satisfy these two elements. ECF No. 123, PageID.4054-4055. The Court disagrees.

Ward maintains that Childs and Collins[4] fabricated Twilley's and Cowan's testimony about Ward's purported confessions. ECF No. 129, PageID.6401. Ward has shown that Childs and Collins took part in obtaining the evidence. Childs took Twilley's and Cowan's statements. ECF No. 123-14, PageID.4710-4711; ECF No. 123-15, PageID.4785-4786; ECF No. 123-27, PageID.5319; ECF No. 123-28. Collins was the lead investigator on the case. ECF No. 123-8, PageID.4322-4323. And prosecutor Agacinski confirmed that Childs and Collins had Twilley and Cowan testify at Ward's preliminary examination. ECF No. 129-7, PageID.6471-6472.

A reasonable jury could conclude from the evidence that DPD officers, including Childs and Collins, fabricated evidence by using inmate

---

[4] Ward abandons this claim against Jorgensen and Sanders. ECF No. 129, PageID.6401 n.2.

informants who falsely testified to jailhouse confessions by other inmates. Jonathan Hewitt-El, a ninth-floor inmate, testified that he, Twilley, and Cowan were part of a ring of inmates who served as informants for the DPD to beat their own criminal charges.  ECF No. 129-9, PageID.6492, 6502.

Hewitt said that the informants would try to get other inmates to confess to murders.  *Id.*, PageID.6492, 6502.  If the suspects did not confess, the informants would get as much information as they could, and the detectives would make up the rest of the story.  *Id.*, PageID.6492-6493, 6502.  The informant would then sign a statement and testify to the alleged confession during the preliminary examination.  *Id.*  In exchange, detectives would give these informants privileges like food, alcohol, and conjugal visits.  *Id.*, PageID.6511.  Hewitt said that Childs and Collins participated in the scheme.  *Id.*, PageID.6497-6498, 6597-6599.  Another inmate, Edward Allen, confirmed that Twilley provided false testimony to the DPD in exchange for privileges.  ECF No. 128-20, PageID.6108.

In February 1995, Agacinski wrote a memorandum to the chief of the WCPO describing his concerns about the DPD's practice of relying on potentially fabricated jailhouse confessions.  ECF No. 119-15.  Agacinski specified his concern about Twilley's and Cowan's testimony in a case that

he tried in January 1995—likely Ward's case.  *Id.*  Twilley provided

information in about 20 other homicide cases, while Cowan's testimony led

to the incarceration of about six people.  ECF No. 128-7, PageID.5631;

ECF No. 128-9, PageID.5648-5649.  A reasonable jury could infer from

these large numbers and Agacinski's memorandum that the information

provided by Twilley and Cowan was suspect.

Twilley and Cowan benefitted from their cooperation with the DPD.

Collins testified about Twilley's cooperation at a court hearing on Twilley's

motion for relief from judgment.  ECF No. 128-7, PageID.5630-5631.  At

Collins's and other DPD officers' request, the judge agreed to reduce

Twilley's original sentence.  *Id.*, PageID.5633-5634.  Another DPD officer

testified at a sentencing hearing that Cowan was vital to assisting the DPD

with closing Ward's case and several others.  ECF No. 128-9,

PageID.5648.  The judge departed from the guidelines range of five to 15

years and sentenced Cowan to one year of probation.  *Id.*, PageID.5649.

Those hearings took place in July 1994, only two months after Twilley and

Cowan testified at Ward's preliminary examination.  *See* ECF No. 128-7;

ECF No. 128-9.

From these facts, a jury could reasonably find that Childs and Collins knowingly manufactured Twilley's and Cowan's testimony against Ward in exchange for leniency on their sentences.

Twilley's and Cowan's testimony could have impacted the jury's verdict.  Twilley testified about Ward's alleged confession, and Cowan's preliminary examination testimony was read to the jury.  ECF No. 123-14, PageID.4700-4706; ECF No. 123-15, PageID.4763-4764, 4767-4770.  Childs testified that Ward provided a statement confessing to the murders, but Ward's attorney pointed out that Ward did not sign the statement.  ECF No. 123-15, PageID.4790-4791, 4809-4809; *see also* ECF No. 123-10, PageID.4437.  And Stancil recanted his previous testimony about Ward's confession, denying that he and Ward ever spoke about the victims' deaths.  ECF No. 123-15, PageID.4836-4846.  Without Twilley's and Cowan's testimony, the sole evidence that Ward confessed to the murders would have been Childs's testimony.  A jury may have found that Childs's testimony alone was not enough to convict Ward.

Citing *Robertson v. Lucas*, defendants argue that Ward cannot prevail on his fabrication of evidence claim because there was probable cause to arrest and detain him.  ECF No. 123, PageID.4055.  *Robertson* held that the plaintiffs could not prevail on a *Fourth Amendment* claim

18

because they could not show that the defendants were involved with manufacturing the allegedly false grand jury testimony that led to the arrest warrants.  753 F.3d 606, 619 (6th Cir. 2014).  But a due process claim of fabrication of evidence "does not require a conclusion that the state did not have probable cause to prosecute the claimant."  *Sanford*, 381 F. Supp. 3d at 918 (cleaned up).

The next question is whether there is evidence to support Ward's claim that Childs and Collins withheld evidence.  This claim stems from the prosecution's obligation to disclose exculpatory material as stated in *Brady v. Maryland*, 373 U.S. 83 (1963).  *Mills*, 869 F.3d at 485.  A due process violation occurs when "the State suppresses evidence favorable to a defendant that is material to" his guilt and that "would have had a reasonable probability of changing the result of the proceeding."  *Id.*  The obligation to produce exculpatory evidence extends to both prosecutors and police officers.  *Id.*  Police officers fulfill their *Brady* obligations "as long as they inform the prosecutor about evidence that undermines the state's preferred theory of the crime."  *D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir. 2014) (cleaned up).

Ward asserts that Childs and Collins withheld evidence that Twilley and Cowan received reduced sentences in exchange for their statements

19

and testimony.  ECF No. 129, PageID.6404.  An express cooperation

agreement between the prosecution and a witness is impeachment

evidence that must be disclosed, as is "the existence of a less formal,

unwritten or tacit agreement."  *Bell v. Bell*, 512 F.3d 223, 233 (6th Cir.

2008) (cleaned up).  But there must be proof of the existence of an

unwritten agreement; the mere fact that a witness hopes for favorable

treatment is not enough.  *Ward v. Bergh*, No. 10-12096, 2017 WL 8780144,

at *9 (E.D. Mich. July 21, 2017).

Twilley's sentence was reduced in July 1994 because of his

cooperation with the DPD.  ECF No. 128-7, PageID.5630-5631, 5633-5634.

The sentence reduction occurred at Collins's request just two months after

Twilley testified at Ward's preliminary examination and before he testified at

trial.  *See* ECF No. 119-15.  Cowan entered into a plea agreement in April

1994, just before he testified at Ward's preliminary examination.  ECF No.

128-11.  Cowan was sentenced in July 1994 well below the guidelines

range because of his cooperation in Ward's case and others.  ECF No.

128-9, PageID.5648-5649.  Agacinski was not involved in Twilley's or

Cowan's sentencing proceedings, nor is there any evidence that Childs or

Collins informed him of these developments before Ward's trial.  ECF No.

20

128-7.  A reasonable jury could conclude that Childs and Collins withheld

this material impeachment evidence.

Thus, Childs and Collins are not entitled to summary judgment on

Ward's claims that they fabricated and withheld evidence.

**3.**

A federal malicious prosecution claim has four elements:

(1) a criminal prosecution was initiated against the plaintiff, and
the defendant made, influenced, or participated in the decision
to prosecute; (2) there was a lack of probable cause for the
criminal prosecution; (3) the plaintiff suffered a deprivation of
liberty, as understood under Fourth Amendment jurisprudence,
apart from the initial seizure; and (4) the criminal proceeding
was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (cleaned up).

Defendants contend that Ward cannot satisfy the first or second elements.

ECF No. 123, PageID.4056.

As to the first element, defendants maintain that the criminal

proceedings against Ward were brought by the WCPO, not them.  *Id.*  But

an officer may be found liable for participating in the prosecution if he acts

"in a way that aids in the decision, as opposed to passively or neutrally

participating."  *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015).  A

defendant can participate by "knowingly or recklessly making false

statements that are material to the prosecution either in reports or in

affidavits filed to secure warrants." *King*, 852 F.3d at 583; *see also Webb*, 789 F.3d at 665-66.  As discussed, there is enough evidence to support Ward's claim that Childs and Collins[5] knowingly made false statements.

There is also enough evidence for the second element.  Probable cause supports a criminal prosecution if the facts could lead an officer reasonably to "believe the accused was guilty of the crime charged." *Webb*, 789 F.3d at 666.  A plaintiff can prove malicious prosecution by showing that the investigating officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood and such statements or omissions were material, or necessary, to the finding of probable cause." *Smith*, 2023 WL 8788944, at *15 (quoting *Sykes v. Anderson,* 625 F.3d 294, 305 (6th Cir. 2010)) (cleaned up).  "In other words, the legitimate evidence offered in support of probable cause can be contaminated by the phony, concocted information, which spoils the totality of the presentation." *Id.*

Viewing the evidence in Ward's favor, probable cause did not support his prosecution.  As discussed, the evidence supports a finding that Childs and Collins solicited Twilley's and Cowan's false testimony.  A reasonable

---

[5] Ward dismisses the malicious prosecution claim against Jorgensen and Sanders.  ECF No. 129, PageID.6408 n.4.

jury could find that the false testimony was material to the probable cause determination.  Setting aside Twilley's and Cowan's testimony, the only other evidence of Ward's guilt was (1) Ward's alleged confession to Childs and (2) Stancil's testimony.  But Ward did not sign the statement, nor was it presented to the judge during the preliminary examination.  *See* ECF No. 123-10; ECF No. 123-12, PageID.4442.

And Stancil's testimony cannot alone support probable cause. Unless there is "apparent reason" to disbelieve the evidence, witness statements to police can establish probable cause without further corroboration.  *Creger v. Tucker*, Nos. 23-5045/5047, 2024 WL 124437, at *12 (6th Cir. Jan. 11, 2024) (cleaned up); *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999).  Childs and Collins had a glaring reason to disbelieve Stancil's statements: because Stancil was arrested as a suspect to the murders, he had a strong motive to cast blame on someone else.  *See* ECF No. 123-18, PageID.4953-4954.

And Stancil's version of events kept evolving.  In his first statement, Stancil said that Ward told him over the phone that he killed the victims. ECF No. 123-4, PageID.4189.  In his second statement, Stancil claimed that the truth was that Ward had confessed in person.  ECF No. 123-5, PageID.4193.  During the preliminary examination, Stancil first denied that

he spoke to Ward about Gilliam after the murders.  ECF No. 123-12,

PageID.4449.  Confronted with his prior statements, Stancil changed his

testimony and said that those statements were true.  *Id.*, PageID.4450,

4452.  Even then, Stancil refused to testify about his conversation with

Ward before eventually saying that Ward told him that he killed the victims.

*Id.*, PageID.4453, 4458-4463.  Given Stancil's inconsistencies and motive

to lie, a jury could find that his testimony did not establish probable cause

to support Ward's prosecution.

Thus, Childs and Collins are not entitled to summary judgment on

Ward's malicious prosecution claim.

**4.**

Defendants contend that Ward's civil conspiracy claim under § 1983

is barred under the statute of limitations.  ECF No. 123, PageID.4058-4059.

The parties agree that a three-year statute of limitations applies.  *Id.*,

PageID.4059; ECF No. 129, PageID.6411.  The accrual date for a § 1983

conspiracy claim is determined by reference to the accrual date for the

underlying constitutional violation.  *See Spadaro v. City of Miramar*, 855 F.

Supp. 2d 1317, 1333 (S.D. Fla. 2012) (collecting cases); *Hobley v. Burge*,

No. 03 C 3678, 2004 WL 1243929, at *8 (N.D. Ill. June 3, 2004) ("The

timeliness analysis used to address the accrual of each of the constitutional

violations that make up the conspiracy therefore also applies to the conspiracy based on those acts.").

The statutes of limitations for Ward's false arrest and unlawful detention claims are addressed above.  Consistent with that analysis, Ward's conspiracy claim for false arrest is barred, but the conspiracy claim for unlawful detention is not.  Defendants' cursory argument fails to address the accrual dates for Ward's other constitutional claims.  *See* ECF No. 123, PageID.4058-4059.  Thus, defendants have waived this argument for the other alleged constitutional violations, and the Court declines to address the issue further.  *See McPherson*, 125 F.3d at 995-96.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007).  To prevail on this claim, Ward must show that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed" in furtherance of the conspiracy.  *Id.*  "Conspiracy claims must be pled with some degree of specificity," and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Heyne v Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011).  A conspiracy claim cannot succeed if there

was no underlying constitutional violation.  *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009).

Defendants contend that Ward's pleadings cannot sustain a conspiracy claim.  ECF No. 123, PageID.4057-4058.  The Court disagrees with respect to Childs and Collins.  Ward alleges that Childs and Collins planned to convict him of the murders and shared an objective to violate his constitutional rights.  ECF No. 1, PageID.38.  He asserts that Childs and Collins fabricated Twilley's and Cowan's false testimony, leading to his detention without probable cause and his ultimate conviction.  *Id.*, PageID.7-17, 34-38.  That is enough to state a plausible conspiracy claim against them.

But Ward's conspiracy claims against Jorgenson and Sanders concern his arrest only and, as noted, any claim based on Ward's arrest is barred by the statute of limitations.  *See* ECF No. 1, PageID.6-7.  Thus, summary judgment of the conspiracy claims against Jorgensen and Sanders should be granted.

Childs and Collins insist that Ward cannot prove that the alleged conspiracy caused him harm; they claim that his illegal detention was caused by his own failure to produce Bradford as a witness.  ECF No. 123, PageID.4058.  They cite *Marvaso v. Sanchez* as stating that "a § 1983

plaintiff must establish both causation in fact and proximate causation."
971 F.3d 599, 606 (6th Cir. 2020) (cleaned up).  But to show that summary
judgment on causation grounds should be granted, Childs and Collins had
to present "uncontroverted evidence" that Ward would not have been
detained had he called Bradford as a witness.  *Id.* at 607.  They present
nothing but supposition that Bradford's testimony would have prevented
Ward's detention, so summary judgment of the conspiracy claim against
them should be denied.

### 5.

Defendants challenge Ward's pleadings on his failure to intervene
claim.  ECF No. 123, PageID.4060.  An officer is liable for failure to
intervene if he observed or had reason to know that a constitutional
violation was committed by another law enforcement officer.  *Jacobs v.
Village of Ottawa Hills*, 5 F. App'x 390, 395 (6th Cir. 2001).  Not only must
the officer have observed or known of the violation, he also must have had
"both the opportunity and the means to prevent the harm from occurring."
*Smith v. City of Troy, Ohio*, 874 F.3d 938, 946 (6th Cir. 2017).

Ward asserts that Childs and Collins failed to intervene in each
other's fabrication and withholding of evidence, while Jorgensen and
Sanders arrested him at Childs's direction.  ECF No. 129, PageID.6412.

27

Ward also made these allegations in his complaint.  ECF No. 1, PageID.6-17, 39-40.  And he alleges that defendants observed or had reason to know of these constitutional violations and did not intervene, despite having an opportunity to do so.  *Id.*, PageID.39.  Defendants do not specify what more Ward needed to allege in his complaint.

Defendants also argue that Ward has failed to prove that they violated a constitutional right or had an opportunity to prevent the harm.  ECF No. 123, PageID.4060.  But as discussed, Ward has offered evidence supporting a finding that Childs and Collins fabricated and withheld evidence, leading to Ward's continued detention and conviction.  He also adduced evidence that Childs's and Collins's actions were part of a larger scheme within the DPD to obtain convictions.  Since Childs and Collins worked together investigating Ward's case and were allegedly part of the same scheme, a reasonable jury could conclude that they knew about the constitutional violations and had the opportunity to intervene.

But Jorgensen and Sanders are entitled to summary judgment on this claim.  "While officers must affirmatively intervene to prevent other officers from violating an individual's constitutional rights, that obligation does not extend to questioning the basis for a fellow officer's reasons for arrest."  *Jacobs*, 5 F. App'x at 395 (cleaned up).  Thus, when Childs ordered

28

Jorgensen and Sanders to arrest Ward, ECF No. 123-13, PageID.4570, they had no duty to question Childs about the probable cause for the arrest. And Ward does not show that Jorgensen and Sanders had reason to believe that probable cause to arrest was wanting. The failure to intervene claim against Jorgensen and Sanders thus fails.

**6.**

The Eighth Amendment requires prison staff to take reasonable measures to guarantee prisoners' personal safety, including protecting them from violence perpetrated by other prisoners. *Hudson v. Palmer*, 468 U.S. 517, 527 (1984); *Wilson v. Yaklick*, 148 F.3d 596, 600 (6th Cir. 1998). To state an Eighth Amendment claim, a plaintiff must allege facts that plausibly meet objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For a failure to protect claim, a plaintiff must allege facts showing that "(1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the [plaintiff's] safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011).

The subjective element requires that the defendants acted with deliberate indifference, meaning that they "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 766-67. But an "official who was unaware of a substantial risk of harm may not be held liable under

29

the Eighth Amendment even if the risk was obvious and a reasonable official would have noticed it." *Id.* (cleaned up).

Ward alleges that while he was in the ninth-floor lockup at the DPD, Cowan threatened and sexually assaulted him while holding a makeshift glass knife to his neck.  ECF No. 1, PageID.9.  He alleges that defendants knew that he faced a substantial risk of harm but failed to mitigate that risk. *Id.*, PageID.9, 40-41.  The Court agrees with defendants that these pleadings are deficient in that Ward fails to plead facts showing that defendants knew of the risk that he would be assaulted.

Nor did Ward allege each defendant's personal involvement.  To succeed on a § 1983 claim, a plaintiff must allege "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) (each defendant must be personally involved in the unconstitutional action). Proximity to the wrongdoer does not convey responsibility.  *Pineda*, 977 F.3d at 490.  Blanket allegations against "defendants" generally, without stating with particularity what *each* defendant did to violate the asserted constitutional right, are not enough.  *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne*, 655 F.3d at 564).  Ward's allegations are

made broadly against "defendants," without specifying how each defendant ignored the risk of harm.

Ward contends that it is improper to challenge the pleadings at the summary judgment stage.  ECF No. 129, PageID.6412.  That argument lacks merit.  *See J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86 (6th Cir. 2007) (finding that "filing motions under multiple legal characterizations is an accepted practice").  And Ward offers no evidence about an alleged sexual assault by Cowan, let alone defendants' subjective knowledge that an attack might occur.  Thus, the claim is supported by neither the pleadings nor the evidence and should be dismissed.

**E.**

Defendants next argue that Michigan's Government Tort Liability Act (GTLA) shields them from liability on Ward's state-law claims.  ECF No. 123, PageID.4062.  An officer is entitled to immunity for an intentional tort[6] if: (1) the acts were undertaken in the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority; (2) the acts were undertaken in good faith, or were

---

[6] False arrest, malicious prosecution, abuse of process, and intentional infliction of emotional distress are intentional torts.  *Orr v. City of Roseville*, No. 10-11389, 2010 WL 2595533, at *4 (E.D. Mich. June 24, 2010).

31

not undertaken with malice; and (3) the acts were discretionary, rather than ministerial.  *Odom v. Wayne Cnty.*, 482 Mich. 459, 480 (2008).

Defendants dispute the second element, arguing that Ward has failed to prove that they acted maliciously or in bad faith.  ECF No. 123, PageID.4062.  But as discussed, Ward has produced evidence supporting his claim that Childs and Collins fabricated and withheld evidence as part of a scheme to obtain convictions.  A jury could infer that Childs and Collins acted in bad faith.  But Ward has no evidence that Jorgensen or Sanders acted in bad faith, so they are entitled to immunity on the intentional tort claims.

As for negligent torts, the GTLA states that government officials are immune if (1) the officer acted or reasonably believed he was acting within the scope of his authority, (2) the governmental agency was engaged in the exercise or discharge of a governmental function, and (3) the conduct did not amount to gross negligence.  Mich. Comp. Laws § 691.1407(2)(c).  Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  *Id.* § 691.1407(8)(a).  Ward asserts a gross negligence claim resting on defendants' alleged failure to protect him from sexual assault by Cowan.  ECF No. 1, PageID.45-46.  There is no dispute that the first two elements of immunity are met for this

claim.  And as discussed, Ward has not shown that defendants recklessly disregarded a known risk of harm.  Thus, defendants are entitled to immunity on Ward's gross negligence claim.

**F.**

Last, defendants contend that Ward's state-law claims are barred under the statutes of limitations.  ECF No. 123, PageID.4062.  Defendants provide the limitations periods for those claims but do not address when they accrued.  *See id.*; ECF No. 131.

As explained in the Court's statute of limitations analysis above, the accrual date is not a straightforward issue in wrongful conviction cases. The Michigan Court of Appeals agrees, referring to the accrual date for false arrest and false imprisonment claims as a "close[] question" and sidestepping whether the *Heck* doctrine applies.  *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 15 nn.11, 12 (2003).  Because defendants did not address the accrual dates, they did not meet their burden of showing that they are entitled to summary judgment and have waived the issue.  *See McPherson*, 125 F.3d at 995-96.

## IV.    Conclusion

The Court thus **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED IN PART AND DENIED IN PART** (ECF No. 123).

33

Childs and Collins are entitled to dismissal of Ward's § 1983 claims for false arrest, failure to protect, and conspiracy stemming from the false arrest, as well as dismissal of the state-law gross negligence claim.

Based on the arguments raised by defendants, all claims against Jorgensen and Sanders should be dismissed except for the § 1983 unlawful detention claim.  But because of the lack of evidence that they knew that probable cause supporting Ward's arrest was wanting, this Court questions whether Jorgensen and Sanders had enough personal involvement to be held liable under § 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Thus, in a separate order, the Court will order Ward to address why summary judgment of the claims against Jorgensen and Sanders should not be granted under Rule 56(f)(2).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: February 28, 2024

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 28, 2024.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager
