UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMON WARD,

          Plaintiff,                    Case No. 21-cv-12742

v.                                   HON. MARK A. GOLDSMITH

COUNTY OF WAYNE, et al.,

          Defendants.
_____/

## OPINION & ORDER
### (1) ACCEPTING THE MAGISTRATE JUDGE'S FEBRUARY 28, 2024 REPORT AND RECOMMENDATION (Dkt. 151), (2) ACCEPTING THE MAGISTRATE JUDGE'S APRIL 30, 2024 REPORT AND RECOMMENDATION (Dkt. 160), (3) OVERRULING PLAINTIFF'S OBJECTIONS TO THE FEBRUARY 28, 2024 REPORT AND RECOMMENDATION (Dkt. 156), (4) OVERRULING DEFENDANTS' OBJECTIONS TO THE FEBRUARY 28, 2024 REPORT AND RECOMMENDATION (Dkt. 157), (5) OVERRULING PLAINTIFF'S OBJECTIONS TO THE APRIL 30, 2024 REPORT AND RECOMMENDATION (Dkt. 161), AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 123)

Plaintiff Ramon Ward brought this action against Wayne County and a number of individual defendants with the Wayne County Prosecutor's Office and the Detroit Police Department (DPD) alleging violations of federal and state law in connection with Ward's alleged wrongful arrest, detention, prosecution, and conviction for the 1994 murders of two individuals. After a series of voluntary dismissals and an Opinion and Order granting Wayne County's motion for summary judgment, the four remaining Defendants are DPD officers Monica Childs, Dale Collins, Fred Jorgensen, and Tony Sanders.

1

Now before the Court are the two Reports and Recommendations (R&Rs) of Magistrate Judge Elizabeth A. Stafford issued on February 28, 2024 and April 30, 2024 (Dkts. 151, 160).   In the two R&Rs, the magistrate judge recommends that the DPD Defendants' motion for summary judgment (Dkt. 123) be granted in part and denied in part. Both Ward and the DPD Defendants filed timely objections to the February 28, 2024 R&R (Dkts. 156, 157), and Ward filed a timely objection to the April 30, 2024 R&R (Dkt. 161).   The Court concludes a hearing is unnecessary. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

For the reasons that follow, the Court overrules Ward's Objections to the February 28, 2024 R&R, overrules Defendants' Objections to the February 28, 2024 R&R, overrules Ward's Objection to the April 30, 2024 R&R, accepts and adopts the Magistrate Judge's February 28, 2024 R&R and April 30, 2024 R&R, and grants in part and denies in part Defendants' motion for summary judgment.

## I.  BACKGROUND

The relevant background facts recited below are also generally set forth in the magistrate judge's two R&Rs. See 2/28/24 R&R at 2-6; 4/30/24 R&R at 2.

### A.  Factual Background

In January 1994, Joan Gilliam and Denise Sharon Cornell were found murdered by gunshot wounds to their heads.  (Dkt. 123-11, PageID.4438).  DPD Defendant Dale Collins was the lead investigator on the case, and DPD Defendant Monica Childs assisted in the investigation.  (Dkt. 123-8, PageID.4322-23).  On April 18, 1994, Childs took a statement from Jimmie Lee Stancil, Ward's cousin.  (Dkt. 123-4).  Stancil stated that Gilliam had been sleeping in the basement of a house that he, Ward, and Oshea Ward (Ward's brother) rented from Lenora "Lee" Allen Butchee.

Stancil said that Gilliam owed Ward money and that Ward threatened to kill her if she did not pay. When Stancil learned of Gilliam and Cornell's murders, he asked Ward if he had done it. Ward allegedly responded, "Yeah, I took care of that." Id. PageID.4189.

Childs took a second statement from Stancil on April 22, 1994. (Dkt. 123-5). In that second statement, Stancil reported that Ward used Cornell to set up Gilliam to steal her Social Security check. Ward believed that Gilliam was getting a check for $8,000.00, which he planned to steal to fund his drug dealing operation. Stancil again stated that Ward told him that he killed the victims. Id. at PageID.4193.

On April 20, 1994, Childs ordered Defendant DPD officers Fred Jorgensen and Tony Sanders to arrest Ward based on Stancil's first statement. (Dkt. 123-13, PageID.4570-71). Jorgensen and Sanders arrested Ward, advised him of his Miranda rights, and Ward provided a statement. (Dkt. 123-6, 123-7). In that statement, Ward said that he saw Gilliam and Cornell being forced out of a car and into a house by Butchee, Cherokee Marcilis, and another man he did not recognize. Ward approached the house and looked through a window, where he saw Gilliam on her knees yelling, "I didn't tell the police!" Ward stated that Butchee shot Gilliam and that Ward immediately ran from the scene. Ward did not see who shot Cornell but believed that it was Marcilis. (Dkt. 123-7, PageID.4196-97).

Ward was then lodged in the Ninth Floor Lockup at DPD headquarters. (Dkt. 123-8, PageID.4329). Childs claims that she spoke with Ward the next day, April 21, 1994, that he appeared "traumatized" and "really agitated," and that he confessed to the murders, saying "I killed them hos, I did…" Id. at PageID.4331–32. Childs re-read Ward his Miranda rights and interviewed him. (Dkt. 123-9, PageID.4436). Childs prepared a statement, which Ward did not

sign, documenting the interview. (Dkt. 123-10). According to that unsigned statement, Childs

asked Ward if he wanted to change anything about his first statement, and Ward purportedly said,

> I lied because I didn't want it to look like cold-blooded murder. They wasn't
> nothing but two hoes. I was just gone [sic] rob [Gilliam] and take her [Social
> Security] check but the shit got out of hand. [Cornell] set [Gilliam] up for me 'cause
> everybody knew that [Gilliam] was getting a big check from [Social Security].

Id. at PageID.4437. When asked if he shot the victims, Ward allegedly responded that he had. Id.

Joe Twilley and Oliver Cowan, two inmate informants housed in the DPD's Ninth Floor

Lockup, provided written witness statements dated April 22, 1994 and April 28, 1994,

respectively, stating that Ward had confessed to them on Wednesday evening, April 21st, while

they were all housed in the Ninth Floor Lockup, that he had killed the victims. (Dkts. 123-27, 123-

28). Twilley and Cowan claimed in their statements that Ward told them that he planned to steal

a check from Gilliam and that he shot her and Cornell. (Dkts. 123-27, 123-28). Ward maintains

that Twilley's and Cowan's statements and later testimony were fabricated.

The assistant prosecuting attorney recommended issuing a warrant for Ward's arrest. (Dkt.

123-11). Ward's preliminary examination took place on May 5, 1994. (Dkt. 123-12). Twilley,

Cowan, and Stancil testified at the hearing, and Ward was bound over for trial. Id. at PageID.4458-

4467, 4492-4496, 4513-4514, 4527-4528.[1]

A jury trial took place in January 1995, with Robert Agacinski as the prosecutor. Agacinski

presented testimony from Twilley, Stancil, Childs, and others. Cowan's preliminary examination

---

[1] Before trial, Ward moved to suppress the statements he made to Childs, challenging whether he
made them at all, whether they were made voluntarily, the adequacy of the Miranda warnings, and
whether probable cause supported the arrest. The trial court denied the motion. (Dkt. 123-13,
PageID.4594-4596, 4598-4599, 4600-01).

testimony was read into the record, as he died before trial.  (Dkt. 123-14, PageID.4603-04).  The jury convicted Ward on all counts, and the trial judge sentenced him to life in prison without the possibility of parole.  (Dkt. 123-16, PageID.4869, 4874).

In February 1995, Agacinski wrote a memorandum to the chief of the WCPO describing his concerns about the DPD's practice of relying on potentially fabricated jailhouse confessions. (Dkt. 119-15 (stating that he has been told that "the snitches do lie about overhearing confessions and fabricate the admissions in order to obtain police favors or obtain the deals promised")). Agacinski specifically mentioned his concern about Twilley's and Cowan's testimony in a case he "personally tried last month," which may have been Ward's case.  Id.

Ward appealed his conviction and sentence; the Michigan Court of Appeals ultimately affirmed, and the Michigan Supreme Court denied leave to appeal.  (Dkt. 123-17; Dkt. 123-18; Dkt. 123-19; Dkt. 123-20, PageID.4965-4966).  Ward also filed motions for post-judgment relief claiming that Twilley's and Cowan's testimony was fabricated, but those motions and resulting appeals were denied.  (Dkt. 123-20; Dkt. 123-22; Dkt. 123-23; Dkt. 123-24).  Ward later petitioned for habeas corpus relief, which was also denied.  (Dkt. 123-25).

In 2018, the Conviction Integrity Unit of the Wayne County Prosecutor's Office (WCPO) investigated Ward's case based on new evidence.  Ward produced an affidavit from Pernell Bradford (also known as Perrell Bradford or Parnell Bradford), who stated that Ward was not the shooter or the killer of Gilliam and Cornell and that he witnessed Marcilis shoot the two female victims.  Bradford, who was twelve years old at the time of the shooting, said that he did not come forward earlier because his father and Ward told him to remain silent.  (Dkt. 148).  Also, Bradford

was convicted of two murders and one count of felony firearm in October 2003 and he had been sentenced to prison for 30 to 60 years.  Id.

In February 2020, the trial court entered the parties' stipulated order vacating Ward's conviction and sentence based on "newly discovered evidence."  (Dkt. 123-2).

### B.  Procedural Background

Ward brings this action under 42 U.S.C. § 1983, asserting claims against the DPD Defendants for: (1) false arrest; (2) unlawful detention pursuant to legal process; (3) fabrication and withholding of evidence; (4) malicious prosecution; (5) conspiracy; (6) failure to intervene; and (7) failure to protect.  Compl. (Dkt. 1, PageID.34-41).[2]  And he makes state-law claims of (1) false arrest; (2) malicious prosecution; (3) abuse of process; (4) intentional infliction of emotional distress; and (5) gross negligence. Id. at PageID.43-46.

Before the magistrate judge was the DPD Defendants' motion for summary judgment. (Dkt. 123).[3]  The magistrate judge issued two R&Rs recommending granting in part and denying in part the DPD Defendants' motion.  (Dkts 151, 160).  In the first R&R, the magistrate judge recommends that Ward's § 1983 claims against Collins and Child for false arrest (Count I), failure to protect (Count VII), and conspiracy stemming from the false arrest (Count V), and his state law gross negligence claim (Count XIII) against those two Defendants, be dismissed. She also recommended not dismissing the  remaining claims against those Defendants – i.e. § 1983

---

[2] Ward also brought a Monell claim against Wayne County (Count VIII), which was not at issue in the DPD Defendants' motion for summary judgment.  Compl. at PageID.41-43.  The Court has since granted summary judgment to Wayne County on Ward's claims against it.  (Dkt. 158).

[3] On October 13, 2023, this case referred to the magistrate judge for full pretrial proceedings, including a report and recommendation on the pending motions for summary judgment. (Dkt. 140). On June 27, 2024, this case was reassigned from the Honorable Paul D. Borman to the undersigned.

unlawful detention (Count II), fabrication and withholding of evidence (Count III), malicious prosecution (Count IV), civil conspiracy stemming from unlawful detention (Count V), and failure to intervene (Count VI) claims, and remaining state law intentional tort claims (Counts IX – XII). The magistrate judge also recommended that all claims against Jorgensen and Sanders be dismissed, except for the § 1983 unlawful detention claim (Count II). 2/28/24 R&R. The magistrate judge further stated that "because of the lack of evidence that [Jorgensen and Sanders] knew that probable cause supporting Ward's arrest was wanting, this Court questions whether Jorgensen and Sanders had enough personal involvement to be held liable under § 1983." Id. at 34. The magistrate judge, therefore, ordered "Ward to address [in supplemental briefing] why summary judgment of the claims against Jorgensen and Sanders should not be granted under Rule 56(f)(2)." Id.; (Dkt. 152).

After Ward filed a supplemental brief (Dkt. 155), the magistrate judge issued a second R&R recommending that summary judgment on the remaining unlawful detention claim against Jorgensen and Sanders be granted under Fed. R. Civ. P. 56(f)(2). 4/30/24 R&R.

Ward filed an objection to the first R&R (Dkt. 156). The DPD Defendants did not file a response to Ward's objection but did file their own objection to the first R&R (Dkt. 157), to which Ward responded (Dkt. 159). Ward also filed an objection to the second R&R (Dkt. 161). Again, the DPD Defendants did not file a response to that objection.

## II. ANALYSIS

The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate [judge]'s report made to the

district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.") (punctuation modified).  Absent a specific objection, the issue is waived.  Willis v. Sullivan, 931 F.2d 390, 401 (6th Cir. 1991). Additionally, any issues raised for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013).[4]

### A.  Ward's Objections to the 2/28/24 R&R (Dkt. 161)

Ward filed six objections to the magistrate judge's February 28, 2024 R&R.  (Dkt. 161).

### 1.  Ward's Objection No. 1:  Whether the magistrate judge erred in granting summary judgment in favor of the DPD Defendants on Ward's False Arrest claim (Count I)

The magistrate judge granted summary judgment in favor of the DPD Defendants on Ward's § 1983 false arrest claim on the ground that it was time barred.  Ward alleges in Count I of his Complaint that "Defendants arrested Ramon Ward" and "[t]he arrest of Ramon Ward resulted in damages and injuries to Mr. Ward."  See Compl. ¶¶ 229–32; see id. ¶¶ 28–30 (alleging he was arrested without a warrant and "[t]here were no facts to support either reasonable suspicion to detain or probable cause to arrest Ramon Ward for the murders of Cornell and Gilliam.").  The magistrate judge found that Ward's false arrest claim accrued when Ward was bound over for trial in May 1994, and thus that claim is untimely because it is barred by the statute of limitations for

---

[4] The Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007).  The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

8

such a claim under Michigan law. 2/28/24 R&R at 12 (citing Dibrell v. City of Knoxville, Tenn., 984 F.3d 1156, 1162 (6th Cir. 2021) (citing Wallace v. Kato, 549 U.S. 384, 397 (2007))). The magistrate judge separately found that Ward's post-legal-process unlawful detention claim in Count II of his Complaint was timely because that claim did not accrue until the state court vacated Ward's conviction and ordered his release in February 2020. Id. at 12-13 (citing Manuel v. City of Joliet, Ill., 903 F.3d 667, 669 (7th Cir. 2018) ("Manuel II")).

Ward argues in his Objection that while the magistrate judge correctly applied the Seventh Circuit's decision in Manuel II with respect to the accrual of his unlawful detention claim (in Count II), the magistrate judge should have found that Ward's unlawful arrest claim (in Count I) accrues at the same time—when he was released from custody in February 2020. Ward contends that the Seventh Circuit in Manual II concluded that the Supreme Court in Manuel v. City of Joliet, 580 U.S. 357 (2017) ("Manuel I") abrogated the false arrest accrual rule in Wallace, 549 U.S. 384 (2007). Ward Obj. to 2/28/24 R&R at 8. The Court disagrees.

Federal courts apply state statute of limitations in determining whether a plaintiff's § 1983 claim is timely. See Green v. City of Southfield, 759 F. App'x 410, 414 (6th Cir. 2018). Ward's claims arose under Michigan law, and therefore Michigan's three-year statute of limitations for personal injury actions applies. See Mich. Comp. Laws § 600.5805(2); Wolfe v. Perry, 412 F.3d 707, 714 (6th Cir. 2005). "Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run." Wolfe, 412 F.3d at 714. "The general rule is that the limitations periods for ... [an] unlawful arrest action[] begin[s] to run at the time of the injury." Goff v. Monroe, No. 23-10900, 2024 WL 340808, at *3 (E.D. Mich. Jan. 30, 2024) (citing Wolfe, 412 F.3d at 714, and Wallace,

549 U.S. 384). "This is when a plaintiff has 'complete and present cause of action'; in other words, when 'the plaintiff can file suit and obtain relief.'" Id. (citation omitted).

In addition to the general principles discussed above, the Sixth Circuit has stated that a §1983 claim for unlawful arrest has "special accrual rules":

> In Wallace, [ ] the [Supreme] Court made clear that the torts of false arrest and false imprisonment have special accrual rules. These torts, which again challenge a detention without legal process, accrue at the earlier of two dates. They accrue when the false imprisonment ends with the plaintiff's release. Or, if the plaintiff remains detained, they alternatively accrue when the false imprisonment ends with the issuance of legal process—when, for example, the plaintiff is brought before a magistrate. "From that point on," a plaintiff relying on the law of torts to challenge any continuing detention must assert a malicious prosecution claim.

Dibrell, 984 F.3d at 1162 (internal and end citations omitted).

In Wallace, the plaintiff filed suit under § 1983, seeking damages and challenging his arrest as unlawful under the Fourth Amendment. Wallace, 549 U.S. at 386. The plaintiff's arrest led to a lengthy interrogation and a confession, and he was convicted of first-degree murder and sentenced to twenty-six years in prison. Id. On direct appeal, the Illinois appellate court determined that the officers had arrested the plaintiff without probable cause and remanded for a new trial. Id. at 387. Instead of retrying the case, prosecutors dropped the charges. Id. Almost a year after the criminal prosecution was dismissed, the plaintiff filed suit under § 1983. Id. By that time, however, over nine years had passed since the plaintiff's unlawful arrest. The defendants argued the suit was untimely. The Supreme Court agreed, stating "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for

10

the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by

absence of legal process, but by <u>wrongful institution</u> of legal process." <u>Id.</u> at 389–90 (emphases

in original).[5]

Dibrell v. City of Knoxville, Tennessee, 984 F.3d 1156 (6th Cir. 2021), followed the

teaching of <u>Wallace</u>. In <u>Dibrell</u>, police officers detained Dibrell and found drugs in his possession.

<u>Id.</u> at 1159. The state convicted him of drug-trafficking offenses, and the appellate court reversed,

finding that the officers violated the Fourth Amendment by detaining Dibrell without reasonable

---

[5] Ward argues that the Supreme Court in <u>Manuel I</u> abrogated the false arrest accrual rule in
<u>Wallace</u>. The Court disagrees. As stated above, <u>Wallace</u> holds that a false arrest or imprisonment
claims accrues, at the latest, when the defendant receives proper legal process authorizing his
detention, <u>Wallace</u>, 549 U.S. at 391-92, thus addressing pre-legal-process detention. In <u>Manuel I</u>,
the Supreme Court simply confirmed that the plaintiff, who was arrested and detained for nearly
seven weeks—on the basis of allegedly fabricated evidence—and secured dismissal of his criminal
case before proceeding to trial, could challenge his "<u>post-legal-process pretrial detention</u>" under
the Fourth Amendment. <u>Manuel I</u>, 580 U.S. at 368–69 (emphasis added). The Supreme Court
held "that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the
start of legal process," 580 U.S. at 369, but declined to define the "contours" of such a "post-legal-
process pretrial detention" claim and did not answer the separate question of when such a claim
accrues. <u>See id.</u> at 370–73 (noting the accrual issue but "remand[ing] that issue to the court
below."). The Supreme Court subsequently explicitly left intact <u>Wallace's</u> holding regarding false
arrest claims. <u>See</u> <u>McDonough v. Smith</u>, 588 U.S. 109, 122 (2019) ("<u>Wallace</u> held that the
limitations period begins to run on a § 1983 claim alleging an unlawful arrest under the Fourth
Amendment as soon as the arrestee 'becomes detained pursuant to legal process,' not when he is
ultimately released."). As a result, the holding in <u>Wallace</u> that claims for false arrest and false
imprisonment accrue when a defendant in a criminal case is first arraigned remains controlling
precedent. <u>Manuel I</u>, 580 U.S. at 370–71 (citing <u>Wallace</u>, 549 U.S. at 389). The Sixth Circuit in
<u>Dibrell</u> similarly stated, following <u>Manuel I</u>, that the Fourth Amendment "bars all <u>pretrial</u>
detentions without probable cause to believe that a detainee has committed a crime" whether
"detention comes before or after formal 'legal process' (like an arrest warrant or an indictment)."
<u>Dibrell</u>, 984 F.3d at 1160 (emphasis in original). However, as the Sixth Circuit has explained, once
legal process begins, the unlawful arrest or false imprisonment ends, and damages for any
following confinement must be based on a malicious-prosecution or abuse-of-process theory. <u>Id.</u>
at 1162. Accordingly, to the extent Ward challenges his post-legal-process detention, such actions
are encompassed within his malicious prosecution claim.

suspicion before uncovering the drugs.  Id.  Dibrell then brought several claims against the officers under § 1983, including one for "false arrest" and "false imprisonment" and another for "malicious prosecution."  Id.  The district court granted summary judgment to the officers and the city, rejecting Dibrell's § 1983 claims on statute-of-limitations grounds and on the merits.  Id.  Dibrell appealed, and the Sixth Circuit held that Dibrell's false arrest and false imprisonment claim was untimely because it accrued either when he was released on bond or "[a]t the latest" on "the issuance of legal process" when he was indicted.  Id. at 1162-63.  The Sixth Circuit explained that "Dibrell's claim is identical to the claim that Wallace found untimely" and "we cannot accept for Dibrell what the Supreme Court rejected for Wallace."  Id. at 1163.

Accordingly, this Court does not write on a blank state.  Rather, following the Supreme Court's holding in Wallace and the Sixth Circuit's holding in Dibrell, the Court finds that Ward's statute of limitations for his false arrest claim began to run when he was bound over for trial in May 1994 and legal process was initiated.  See Wallace, 549 U.S. at 389–90 (explaining that the damages for unlawful arrest "cover the time of detention up until the issuance of process or arraignment, but not more"); Dibrell, 984 F.3d at 1162 (noting that "if the plaintiff remains detained, [false arrest and false imprisonment claims] … accrue when the false imprisonment ends with the issuance of legal process[.]"); see also Goff, 2024 WL 340800, at *5 ("Plaintiffs' claim for unlawful arrest accrued on November 9, 2019, at the time of Mr. Goff's arraignment," not when the criminal case against Mr. Goff was dismissed).  The statute of limitations on Ward's pre-legal-process unlawful detention claim similarly began to run when Defendants initiated legal process in May 1994.  As the Sixth Circuit has explained, after the initiation of legal process, "a plaintiff relying on the law of torts to challenge any continuing detention must assert a malicious

prosecution claim." <u>Dibrell</u>, 984 F.3d at 1162 (citing <u>Wallace</u>, 549 U.S. at 390).  Ward has asserted such a claim here.

Finally, Ward argues that he was unable to bring a § 1983 claim for false arrest until his conviction was overturned because such a claim would be barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), and its progeny.  This is a new argument, which Ward did not make in the briefing before the magistrate judge.  "It is well established that a party may not raise an argument, advance a theory, or marshal evidence before a district judge that was not fairly presented to the magistrate judge.  The Magistrates Act was not intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court." <u>Childress v. Michalke</u>, No. 10-cv-11008, 2014 WL 3819347, at *3 (E.D. Mich. Aug. 4, 2014) (citing <u>Murr v. United States</u>, 200 F.3d 895, 902 n.1 (6th Cir. 2000)) (quotation marks omitted).  Ward's failure to raise this argument prior to this Objection means he has waived this argument.

In any event, the Court finds that controlling Supreme Court and Sixth Circuit precedents hold that the <u>Heck</u> rule for delayed accrual does not apply to Ward's false arrest claim. <u>See</u> <u>Wallace</u>, 549 U.S. at 397; <u>King v. Hardwood</u>, 852 F.3d 568, 578 (6th Cir. 2017) ("The Supreme Court clarified in <u>Wallace</u> that the rule in <u>Heck</u> does not extend to claims for false arrest or false imprisonment…."); <u>Fox v. DeSoto</u>, 489 F.3d 227, 235 (6th Cir. 2007) ("The <u>Wallace</u> Court rejected both the argument that the statute of limitations on a false arrest claim should begin only after 'an anticipated future conviction ... occurs and is set aside,' and that the statute of limitations on such a claim should be tolled until an anticipated future conviction is set aside.  Accordingly, the possibility that the plaintiff's already-accrued § 1983 claims might impugn an anticipated future conviction did not trigger the <u>Heck</u> rule ....") (internal citations omitted).

13

Accordingly, Ward's First Objection is overruled.

    **2.  Ward's Objection No. 2:  Whether the magistrate judge erred in granting partial summary judgment in favor of Childs and Collins on Ward's conspiracy claim (Count V)**

    **Ward's Objection No. 3:  Whether the magistrate judge erred in granting summary judgment in favor of Jorgensen & Sanders on Ward's conspiracy claim (Count V)**

Ward's second and third objections to the magistrate judge's February 28, 2024 R&R both concern the magistrate judge's rulings on Ward's conspiracy claim in Count V of his Complaint and will be considered together.  The magistrate judge granted partial summary judgment in favor of Defendants Collins and Childs on Ward's conspiracy claim related to the alleged conspiracy involving Ward's false arrest only and granted summary judgment to Defendants Jorgensen and Sanders on Ward's conspiracy claim.  The magistrate judge found that, consistent with the analysis that Ward's false arrest claim is time barred, his conspiracy claim based on false arrest is also barred.  2/28/24 R&R at 25.  And because "Ward's conspiracy claims against Jorgensen and Sanders concern his arrest only," which claim is time-barred, those Defendants are entitled to summary judgment on this claim.  Id. at 26.

"A civil conspiracy claim under § 1983 … lies when there is 'an agreement between two or more persons to injure another by unlawful action.'"  Robertson v. Lucas, 753 F.3d 606, 622 (6th Cir. 2014) (quoting Revis v. Meldrum, 489 F.3d 273, 290 (6th Cir. 2007)).  To succeed on a civil conspiracy claim, a plaintiff "must demonstrate 'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury."  Id.  A plaintiff does not need to show that each conspirator knew every detail of the illegal plan or

14

even the identities of each participant—only that there was a single plan, and that a particular alleged conspirator joined it and shared in the general conspiratorial objective.  Rudd v. City of Norton Shores, 977 F.3d 503, 517 (6th Cir. 2020).  "A civil conspiracy claim is subject to the limitations period that governs the underlying theory of liability."  Goff, 2024 WL 340808, at *6 (citing Mekani v. Homecomings Fin., LLC, 752 F. Supp. 2d 785, 790 n.2 (E.D. Mich. 2010)); see also Hobley v. Burge, No. 03 C 3678, 2004 WL 1243929, at *8 (N.D. Ill. June 3, 2004) ("The timeliness analysis used to address the accrual of each of the constitutional violations that make up the conspiracy therefore also applies to the conspiracy based on those acts.") (citations omitted).

Ward alleges that the DPD Defendants committed several overt acts in furtherance of an alleged conspiracy "to obtain[] false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants," including his false arrest, unlawful detention, fabrication and suppression of evidence, and malicious prosecution, and that the "individual Defendants had a single plan to convict [him] for the murders of Cornell and Gilliam."  Compl. PageID.7-17, 38-39.

Ward argues in his Second Objection only that "there was error in finding that Mr. Ward's false arrest claim was time barred" and thus "partial summary judgment in favor of Childs and Collins is inappropriate as to Mr. Ward's conspiracy claim as it relates to his false arrest."  Ward Obj. to 2/28/24 R&R at 11.  He further argues in his Third Objection that he "raises his conspiracy claims against each Defendant individually for the deprivation of his civil rights, which inherently includes [his] unlawful detention that directly resulted from the false arrest."  Id.  Ward argues that Jorgensen's and Sanders' involvement in his arrest and detention constitutes an overt act in

15

furtherance of the alleged conspiracy, and thus summary judgment as to those two Defendants was inappropriate. Id. at 13.

Because Ward's post-legal-process unlawful detention, malicious prosecution, and fabrication and suppression of evidence claims did not accrue until his exoneration in February 2020, his § 1983 conspiracy claim based on those claims, filed on November 24, 2021, was timely under the three-year statute of limitations. See Goff, 2024 WL 340808, at *6 ("A civil conspiracy claim is subject to the limitations period that governs the underlying theory of liability."); see also Spadaro v. City of Miramar, 855 F. Supp. 2d 1317, 1333 (S.D. Fla. 2012) ("Because a claim for malicious prosecution does not accrue until after a sentence has been vacated, a conspiracy to maliciously prosecute also does not accrue until the sentence is vacated.") (collecting cases).

However, because Ward's false arrest and pre-legal-process unlawful detention claims are time-barred, those actions cannot serve as underlying claims in support of Ward's § 1983 conspiracy claim against any Defendant. See Goff, 2024 WL 340808, at *6 ("Plaintiffs' unlawful arrest claim is barred by the statute of limitations. The corresponding conspiracy claim is barred as well."); see also Davis v. Malitzki, No. 09-0739, 2009 WL 3467770, at *7 (E.D. Pa. Oct. 27, 2009) ("Plaintiff's Section 1983 false arrest and false imprisonment claims are barred by the statute of limitation and cannot serve as underlying claims in support of Plaintiff's conspiracy claim[.]"); Patterson v. Burge, 328 F. Supp. 2d 878, 902 & n.6 (N.D. Ill. 2004) (stating that the plaintiff's § 1983 conspiracy claims' accrual are determined by the same analysis that applies to each individual claim and that a conspiracy claim cannot be based on a dismissed underlying action). Accordingly, summary judgment is appropriate on Ward's conspiracy claim based on his false

16

arrest and unlawful pre-legal-process detention claims against all Defendants, and Ward's objections are overruled.

Ward further argues that his conspiracy claim against Jorgensen and Sanders should not have been dismissed because that claim also includes his unlawful pre-trial detention claim against those Defendants in Count II. Ward is correct that in the February 28, 2024 R&R, the magistrate judge recommended that all claims against Jorgensen and Sanders be dismissed except for the § 1983 unlawful detention claim in Count II. 2/28/24 R&R at 34. Thus, the magistrate judge should not have granted summary judgment <u>at that time</u> to Defendants Jorgensen and Sanders on Ward's conspiracy claim against them based on his alleged unlawful pre-trial detention. However, in the February 28, 2024 R&R, the magistrate judge questioned whether Jorgensen and Sanders had enough personal involvement to be held liable for the unlawful detention claim under § 1983 and ordered Ward to address in supplemental briefing why summary judgment of the claims against Jorgensen and Sanders should not be granted under Rule 56(f)(2).[6]

As discussed <u>infra</u>, the magistrate judge found in the April 30, 2024 R&R that Ward's unlawful detention claim arising from his initial detention—his pre-legal-process detention between his arrest and the preliminary examination in May 1994—is untimely for the same reasons his false arrest claim is—because it accrued when Ward was bound over for trial in May 1994. 4/30/24 R&R at 4-5. The Court agrees for the reasons stated above. While the magistrate judge recognized that Ward's unlawful detention claim arising from his post-legal-process detention was timely, the magistrate judge found that Jorgensen and Sanders were not involved in that post-legal-

---

[6] Fed. R. Civ. P. 56(f)(2) provides that, after giving notice and reasonable time to respond, the court may grant summary judgment to a party on grounds not raised by a party.

process detention and thus Ward's unlawful detention claim against those Defendants fails.  Id. at 6-7.  As the magistrate judge recognized, "[t]o succeed in a § 1983 claim, a plaintiff must show 'that each Government-official defendant, through the defendant's own individual actions, has violated the Constitution."  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Pineda v. Hamilton Cnty., Ohio, 977 F.3d 483, 490 (6th Cir. 2020) (each defendant must be personally involved in the unconstitutional action)).

Jorgensen's and Sanders' only alleged involvement in this case was with Ward's arrest at the direction of Childs.  Compl. ¶¶ 28, 32.  Ward also asserts that Jorgensen testified at a September 2, 1994 motion to suppress hearing about that arrest.  (Dkt. 123-13, PageID.4537-43).  Ward has in fact expressly agreed in his response to Defendants' motion for summary judgment to dismiss the malicious prosecution and fabrication and suppression of evidence claims (in Counts III and IV) against Defendants Jorgensen and Sanders, presumably because those Defendants were not involved with those claims.  Pl Resp. to Mot. for Summ. J. (Dkt. 129, PageID.6401 n.2, 6408 n.4).  Because there is no summary judgment evidence that Defendants Jorgensen and Sanders were involved in the alleged conspiracy in any way beyond the alleged false arrest and pre-legal-process unlawful detention (which claims are time-barred), Defendants Jorgensen and Sanders are entitled to summary judgment on Ward's conspiracy claim.  See McCann v. Fuller, No. 1:19-cv-1032, 2023 WL 10947185, at *18-19 & n. 16 (W.D. Mich. Apr. 20, 2023) (citing in part Webb v. U.S., 789 F.3d 647, 671 (6th Cir. 2015) ("Plaintiffs produced no evidence that [the defendants] personally participated in framing [the plaintiffs], and therefore it cannot be inferred that these Defendants joined in a common plan to frame [the plaintiffs]."));  see also Patterson, 328 F. Supp.

18

2d at 902 n.6 (holding that the plaintiff's conspiracy claim cannot be based on underlying actions that have been dismissed).

The Court, therefore, overrules Ward's Second and Third Objections.  Ward's conspiracy claim against Defendants Childs and Collins based on alleged malicious prosecution and fabrication and suppression of evidence remain.

### 3. Ward's Objection No. 4: Whether the magistrate judge erred in granting summary judgment in favor of Jorgensen and Sanders on Ward's failure-to-intervene claim (Count VI)

The magistrate judge recommended denying summary judgment to Childs and Collins on Ward's failure to intervene claim, finding that Ward had presented evidence supporting a finding that Childs and Collins fabricated and withheld evidence, leading to Ward's continued detention and conviction" and that "[h]e also adduced evidence that Child's and Collins' actions were part of a larger scheme within the DPD to obtain convictions."  2/28/24 R&R at 28.  However, the magistrate judge recommended granting summary judgment in favor of Defendants Jorgensen and Sanders on Ward's failure-to-intervene claim, finding that when Childs ordered them to arrest Ward, they had "no duty to question Childs about probable cause for the arrest."  Id. at 28-29 (citing Jacobs v. Village of Ottawa Hills, 5 F. App'x 390, 395 (6th Cir. 2001)).  The magistrate judge found that Ward failed to show that Jorgensen and Sanders had reason to believe that probable cause to arrest was wanting, and his failure to intervene claim therefore fails.  Id. at 29.

Ward argues in his Objection that, construing all the facts in his favor, there is sufficient evidence before the jury to reasonably find that Jorgensen and Sanders had sufficient time to intervene or prevent Ward's alleged unlawful warrantless arrest without probable cause.  Ward Obj. to 2/28/24 R&R at 16.  Ward contends that Jorgensen and Sanders were the arresting officers

and had the opportunity before leaving the police station to ensure that the warrantless arrest was supported by probable cause, which Ward asserts would entail simply asking Childs what probable cause supported the warrantless arrest.  Id. at 15-16.  He asserts that Jorgensen and Sanders instead followed Childs' orders without question.  Id.

The Sixth Circuit Court of Appeals has held that law enforcement officers have a duty to intervene to prevent an arrest not supported by probable cause.  Bunkley v. City of Detroit, Mich., 902 F.3d 552, 566 (6th Cir. 2018).  To survive summary judgment on a failure to intervene claim, a plaintiff must sufficiently establish that the officers "(1) observed or had reason to know that [the constitutional harm was occurring], and (2) had both the opportunity and means to prevent the harm from occurring."  Sheffey v. City of Covington, 564 F. App'x 783, 793 (6th Cir. 2014) (emphasis added).  Thus, the issue here is whether Ward has adduced summary judgment evidence that Jorgensen and Sanders "(1) observed or had reason to know that [the arrest of Ward lacked probable cause]" and "(2) had both the opportunity and means to prevent the harm from occurring. See id.

In his Objection, Ward addresses only the second element of his failure to intervene claim against Jorgensen and Sanders—whether those two Defendants had the "opportunity and means to prevent the harm from occurring."  He however does not adduce any evidence showing that these two Defendants "observed or had reason to know that [the arrest lacked probable cause]." As stated above, the magistrate judge found that Ward failed to meet this element.  The Court agrees based on the specific facts of this case.

Ward argues that Jacobs v. Village of Ottawa Hills, 5 F. App'x 390 (6th Cir. 2001), cited by the magistrate judge, is readily distinguishable from the facts of this case.  In Jacobs, an officer

arrived on the scene as another officer was already in the process of executing an unconstitutional arrest and merely assisted the officer in placing the plaintiff in handcuffs. Id. at 395. The court granted summary judgment to that defendant officer on the plaintiff's failure-to-intervene claim, explaining that "[w]hile officers must affirmatively intervene to prevent other officers from violating an individual's constitutional rights," "that obligation does not extend to questioning the basis of a fellow officer's reasons for arrest in this situation." Id. at 395 (emphasis in original) (noting that the officer arrived after the first officer had begun the seizure and did not observe or have any reason to know the basis for the individual's seizure).

On the other hand, in Bunkley, the Sixth Circuit found a duty to intervene existed when the officers had arrested the plaintiff for murder despite evidence showing that they knew that (1) they had not investigated the shooting, (2) the plaintiff did not match the descriptions given by the victim of the shooting, (3) they had not questioned the plaintiff; and (4) they made up a false reason for arresting the plaintiff. Bunkley, 902 F.3d at 566.

Here, Jorgensen and Sanders were the arresting officers and whether they had the opportunity to ensure the warrantless arrest was supported by probable cause is generally a question for the jury "unless, based on the evidence, a reasonable jury could not possibly conclude otherwise." See Bunkley, 902 F.3d at 566. Here, the magistrate judge found that Ward has not presented any summary judgment evidence showing that Jorgensen and Sanders had reason to believe that probable cause to arrest Ward was wanting in this case. Ward only asserts that Jorgensen and Sanders arrested Ward, without a warrant, at the direction of Childs and posits that they could have "simply ask[ed] Childs what probable cause supported the warrantless arrest." Jorgensen and Sanders testified that they were told to arrest Ward because he was wanted a double

21

homicide.  (Dkt. 123-13, PageID.4538-39, 4542-43.)  They arrested him that same day, advised him of his constitutional rights, and transported him to DPD headquarters.  Id.

This case does not fall squarely within the facts in either <u>Jacobs</u> or <u>Bunkley</u>, and the Court acknowledges that there is not a blanket rule that an officer never needs to question the basis for an arrest.  However, based on the evidence adduced in this case, the Court finds that this case is more like <u>Jacobs</u> than <u>Bunkley</u>.  Principally, Ward has not presented any summary judgment evidence showing that Jorgensen and/or Sanders had any reason to know that the arrest of Ward was not supported by probable cause, like the officers did in <u>Bunkley</u>.  There is no evidence that Jorgensen or Sanders were involved in obtaining statements supporting the arrest, collecting evidence, or otherwise involved in the investigation leading to Ward's arrest, or otherwise had access to any information that would raise a question as to the basis for the arrest.  "'[R]easonable officers' could conclude that they have probable cause for an arrest based on 'plausible instructions' from a supervisor when 'viewed objectively' in light of their own knowledge of the surrounding facts and circumstances."  <u>Bunkley</u>, 902 F.3d at 562.  Ward has cited no record evidence from which it can be inferred that it would have been evident to Jorgensen or Sanders that the arrest was unlawful, or that they had reason to question Childs' directive to arrest Ward for a double homicide.

Accordingly, the Court agrees, based on the facts in this case, that Sanders and Jorgensen are entitled to summary judgment on Ward's failure to intervene claim, and Wards' Objection No. 4 is overruled.

4. **Ward's Objection No. 5: Whether the magistrate judge erred in granting summary judgment to Childs and Collins on Ward's failure-to-protect claim (Count VII)**

The magistrate judge granted summary judgment to the four DPD Defendants on Ward's failure-to-protect claim. Ward alleges that when he was in the Ninth-Floor Lockup at the DPD, another detainee, Cowan, threatened and sexually assaulted him while holding a makeshift glass knife to his neck. He alleges that the Defendants failed to protect him from a "violent sexual assault by Cowans" on the Ninth floor. Complaint at ¶¶ 269-75. The magistrate judge found that "Ward offers no evidence about an alleged sexual assault by Cowan, let alone [D]efendants' subjective knowledge that an attack might occur." 2/28/24 R&R at 29-31. The magistrate judge further found that Ward failed to allege each Defendants' personal involvement in this claim. Id. The Court agrees.

Ward argues in his Objection that the magistrate judge erred in granting summary judgment to Defendants Childs and Collins on this claim because she applied the wrong standard to his failure-to-protect claim and misconstrued the facts against Ward.[7] Ward Obj. to 2/28/24 R&R at 16-21. Ward states that the Sixth Circuit has explained that it "has now explicitly taken the position that a failure-to-protect claim by a pretrial detainee [such as Ward] requires only an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly." Id. at 17 (citing Westmoreland v. Butler Cnty., Ky., 29 F.46h 721, 728 (6th Cir. 2022) (citing Brawner v. Scott Cnty., 14 F.4th 585, 596 (6th Cir. 2021))). Ward argues that the magistrate judge erred when she found that Ward failed to plead facts that Defendants "knew of the risk that he would be

---

[7] Ward does not object to the grant of summary judgment to Defendants Jorgensen and Sanders on his failure-to-protect claim.

assaulted," 2/28/24 R&R at 30, because "[a] pretrial detainee <u>need not prove subjective elements about an officer's actual awareness of the level of risk</u>, but he must prove the officer was more than merely negligent; the officer must have acted with 'reckless disregard' in the face of 'an unjustifiably high risk of harm.'"  Ward Obj. to 2/28/24 R&R at 18 (quoting <u>Westmoreland</u>, 29 F.4th at 730 (quoting <u>Brawner</u>, 14 F.4th at 596)).

The Court agrees that the magistrate judge improperly applied a subjective standard when granting summary judgment to Childs and Collins on this claim.  <u>See</u> <u>Westmoreland</u>, 29 F.4th at 728.  However, applying the correct objective standard, and construing the evidence in the light most favorable to Ward, the Court finds that Ward nevertheless has failed set forth sufficient record evidence to raise a genuine issue of fact on his failure-to-protect claim against Childs and Collins for trial, and thus overrules Ward's Fifth Objection.

The Sixth Circuit has "explicitly taken the position that a failure-to-protect claim by a pretrial detainee requires only an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly."  <u>Westmoreland</u>, 29 F.4th at 728.  "[T]o establish deliberate indifference for failure to protect, 'a defendant officer must [1] act intentionally in a manner that [2] puts the plaintiff at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, [4] and by failing to do so actually cause the plaintiff's injuries."  <u>Stein v. Gunkel</u>, 43 F.4th 633, 639 (6th Cir. 2022) (quoting <u>Westmoreland</u>, 29 F.4th at 729).  This claim "requires more than negligence because 'liability for negligently inflicting harm is categorically beneath the threshold of constitutional due process.'"  <u>Id.</u> at 639–40.

Ward contends in his Objection that there is sufficient record evidence for a jury to reasonably find that Childs and Collins "act[ed] intentionally in a manner that put[] [Ward] at

24

substantial risk of harm, without taking reasonable steps to abate that risk, and by failing to do so actually cause[d] [Ward's] injuries."  Ward Obj. to 2/28/24 R&R at 21 (quoting Westmoreland, 29 F.4th at 729).  Ward states that he was intentionally detained in the Ninth Floor Lockup following his interrogation by Childs and Collins on April 20, 1994.  (Dkt. 123-8, PageID.4329). He alleges that Childs and Collins participated in a scheme in which Twilley and Cowan were part of a ring of inmates who served as informants for the DPD and would try to get other inmates to confess to murder.  Twilley and Cowan would then sign a statement and testify about the alleged confession during the preliminary examination.  (Dkt. 129-9, PageID.6492, 6497–98, 6502, 6597– 99).  Childs testified she was aware that Twilley and Cowan were out of their cells and walking around on the night Ward was housed on the Ninth Floor and that she had observed them walking freely around the Lockup in the past.  (Dkt. 123-8, PageID.4335–37).  Childs also testified that she was aware of a "rumor" that Cowan would threaten to rape detainees, and that both Childs and Collins were aware that Cowan had HIV/AIDS.  Id. PageID.4431–32, 4353; (Dkt. 123-21, PageID.5050).  Ward testified that he was sexually assaulted by Cowan while housed in the Ninth Floor Lockup on April 20, 1994 (Dkt. 123-26, PageID.5237–39, 5242, 5303), and he complains that Childs and Collins failed to protect him from this assault.

Construing these facts in the light most favorable to Ward, the Court finds that Ward has failed to present sufficient evidence for a jury to reasonably find that Childs and Collins "act[ed] intentionally in a manner that put[] [Ward] at substantial risk of harm [for the alleged sexual assault by Cowan], without taking reasonable steps to abate that risk, and by failing to do so actually cause[d] [Ward's] injuries." See Westmoreland, 29 F.4th at 729.  There is no summary judgment evidence that Childs or Cowans were in the Ninth Floor Lockup while Ward was housed there in

April 1994 following his arrest, but only that he was sent there following his initial questioning by Childs. There is no evidence in this case that Childs or Collins knew or had reason to know that Cowan would assault Ward in the Ninth Floor lockup, or that Childs or Collins otherwise acted in "reckless disregard" in the face of an "unjustifiably high risk of harm." At most, Ward has presented evidence that there was a "rumor" that Cowan would threaten to rape inmates – not that he had actually raped any inmates, or had made any threats against Ward, or that Childs or Collins knew anything about this. (ECF No. 123-8, PageID.4431–32.)

The Court concludes that a reasonable jury could not find that merely being aware of a general "rumor" of a threat shows that Childs or Collins acted with "reckless disregard" in the face of "an unjustifiably high risk of harm" when they sent Ward to the Ninth Floor Lockup after he was arrested. See Westmoreland, 29 F.4th at 730 (remanding to district court to determine whether failure-to-protect claim should survive summary judgment by considering, among other things, whether "a reasonable officer would have appreciated the high degree of risk involved and the obvious consequences of the defendant's conduct" where no measures were taken to protect inmate, whose mother notified jail of threatening actions taken against him because he was an alleged "snitch"); see also Rager ex rel. G.C. v. McMinn Cnty., Tenn., No. 21-5987, 2023 WL 4927252, at *2 (6th Cir. Aug. 2, 2023) (granting summary judgment on failure-to-protect claim where there was no indication that defendant "had to remove Jones from the cell where there was no indication on that day that Jones was likely to attack Cook" just because defendant "knew of Jones's prior violent history").[8] To find otherwise would mean that Childs and Collins could never

---

[8] The Court recognizes that the Sixth Circuit has not held that an inmate's history of violence is never sufficient to create a substantial risk of harm, and that the Sixth Circuit has "repeatedly

send a pretrial detainee to the Ninth Floor Lockup based on a "rumor" of a general threat.  See Davis v. Chorak, No. 22-1839, 2023 WL 2487339, at *3 (6th Cir. Mar. 14, 2023) (finding that merely alleging that another inmate had a violent history is not enough to show substantial risk; rather there needs to be some indication of a personal risk to the plaintiff); see also Walker v. Carbor, No. 24-cv-11093, 2024 WL 2788398, at *3 (E.D. Mich. May 30, 2024) (dismissing plaintiff's failure-to-protect claim because plaintiff "does not allege that these inmates had previously assaulted or threatened him, nor does he allege that he informed prison authorities that these inmates posed a danger to him.").

Childs and Collins therefore are entitled to summary judgment on Ward's failure-to-protect claim, and Ward's Fifth Objection is overruled.

### 5.  Ward's Objection No. 6:  Whether the magistrate judge erred in granting summary judgment in favor of Childs and Collins on Ward's state law gross negligence claim (Count XIII)

The magistrate judge granted summary judgment to Defendants Childs and Collins on Ward's gross negligence claim that is based on Defendants' alleged failure to protect him from sexual assault by Cowan, finding it barred by Michigan's Government Tort Liability Act (GTLA). 2/28/24 R&R at 32-33.  The GTLA provides immunity to government officials for negligent acts if (1) the officer acted or reasonably believed he was acting within the scope of his authority, (2)

---

observed that the risk of violent attack by fellow prisoners known to have previously committed serious assaults, absent precautions, can create a substantial risk of serious harm."  Schoonover v. Rogers, No. 21-3970, 2022 WL 12258998, at *6 (6th Cir. Oct. 21, 2022) (citations omitted). However, in this case, there is no such evidence of such a "known" risk, but only a "rumor" of a general "threat."  "A general vulnerability to attack is normally insufficient for an Eighth Amendment claim; rather, an officer must know about an inmate's "specific" situation."  Id. (emphasis in original) (citing Beck v. Hamblen Cnty., 969 F.3d 592, 601 (6th Cir. 2020)).

the governmental agency was engaged in the exercise or discharge of a governmental function, and (3) the conduct did not amount to gross negligence.  Id. (citing Mich. Comp. Laws § 691.1407(2)(c)).  Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  Mich. Comp. Laws § 691.1407(2).  To hold officers liable, "their gross negligence must be the one most immediate, efficient, and direct cause of the injury or damage, i.e. the proximate cause."  Kruger v. White Lake Twp., 648 N.W.2d 660, 663 (Mich. App. 2002) (quoting Robinson v. Detroit, 613 N.W.2d 307, 319 (Mich. 2000) (quotation marks omitted)).  The magistrate judge found that there is no dispute that the first two elements of immunity are met for Ward's claim, but that Ward has not shown that Defendants recklessly disregarded a known risk of harm.  2/28/24 R&R at 32–33.

Ward argues in his Objection that the magistrate judge erred in finding that Ward did not meet the state law standard for gross negligence.  As discussed supra, the Court finds that Ward's § 1983 failure-to-protect claim does not survive summary judgment because Ward has not shown that the Defendants recklessly disregarded a known risk of harm to Ward.  Ward's gross negligence claim, predicated on that same alleged conduct, similarly fails to survive.  Ward has failed to show that Childs or Collins recklessly disregarded a known risk of harm to Ward.  See Young v. Cnty. of Sanilac, No. 17-11590, 2018 WL 4638055, at *5 (E.D. Mich. Sept. 27, 2018) (granting summary judgment on failure to protect and gross negligence claims based on a lack of evidence that the defendants "demonstrate any behavior towards [plaintiff] that could be considered reckless or show a substantial lack of concern for [plaintiff's] safety well being.").  The Court finds that the magistrate judge therefore did not err in finding that Defendants are entitled to immunity for Ward's gross negligence claim.

Accordingly, Ward's Objection No. 6 is overruled.

**B.  DPD Defendants' Objections to 2/28/24 R&R (Dkt. 157)**

The DPD Defendants filed six Objections to the magistrate judge's February 28, 2024 R&R. (Dkt. 157).  Ward filed a response in opposition to those objections.  (Dkt. 159).

> **1.   Defs. Objection No. 1:  Whether the length of Defendants' brief in support of the motion for summary judgment was arbitrarily restricted.**

>> **a.  30-page limit for Defendants' brief in support of their motion for summary judgment**

On the last day  for filing dispositive motions in this case, Defendants Monica Childs, Dale Collins, Fred Jorgensen, and Tony Sanders filed an ex parte motion to exceed the 25-page limit for a brief in support of motion for summary judgment, requesting a twenty-two (22) page extension (to 47 pages) for the brief in support of Defendants' motion for summary judgment. (Dkt. 95).  At the same time, these Defendants also filed their Motion for Summary Judgment with a 47-page supporting brief and 26 Exhibits.  (Dkt. 97-118).

The Court entered an order denying in part and granting in part Defendants' ex parte motion.  The Court denied Defendants' 22-page extension and struck Defendants' 47-page motion for summary judgment.  The Court granted Defendants a five-page extension, allowing Defendants to file a brief in support of their motion for summary judgment up to 30 pages in length.  (Dkt. 122.)  Defendants then filed their motion for summary judgment with a supporting 30-page supporting brief  (Dkt. 123).

Defendants recognize that the Court's interpretation and application of its local rules are matters within its discretion but complain that the Court abused its discretion when it allowed Defendants only five additional pages for their brief in support of their summary judgment motion

instead of the twenty-two-page extension they wanted.  Defs. Obj. to 2/28/24 R&R at 1 (citing Wright v. Murray Guard, Inc., 455 F.3d 702, 714 (6th Cir. 2006)).  Defendants contend that "five additional pages is inadequate to the point of being prejudicial" to address the factual and procedural background of this case and adequately address the legal arguments.  Id. at 2.

The Court finds that this is not a proper objection to the magistrate judge's "proposed findings and recommendations" in the February 28, 2024 R&R under Rule 72(b) and overrules the Objection.  See Fed. R. Civ. P. 72(b).  Instead, Defendants are objecting to this Court's August 1, 2023 Order.  However, Defendants never filed a motion to reconsider that order, requested supplemental briefing, or otherwise sought relief from that order.  The time for doing so has passed.

The Court further finds that Defendants have failed to show that the Court abused its discretion in denying Defendants' request, made simultaneously with the filing of its motion for summary judgment, for almost double the allowed page limit, on the deadline for filing the motion for summary judgment.  This case does not support such a drastic request.  And, as Ward points out, he had only 25 pages to oppose Defendants' 30-page brief in support of their summary judgment motion.

Accordingly, Defendants' Objection No. 1 is overruled.

### b. The new arguments raised in Defendants' Objection No. 1 are deemed waived

Defendants further argue in this Objection that they would have raised additional or more fulsome arguments in support of their summary judgment motion if they had been granted the additional 22 pages for their brief.  Defendants contend that: (1) they would have sufficiently made an argument that the Court lacks jurisdiction over this case because the Wayne County

Prosecutor's Office did not file a motion seeking to have Ward's criminal conviction vacated but instead submitted to the trial court a stipulated order seeking dismissal without prejudice; and (2) they would have better addressed the accrual date for their conspiracy for unlawful detention claim. Defendants also repeat their exact argument regarding their state law claims that they made in the summary judgment brief. Defendants assert that the magistrate judge improperly found their arguments to be cursory or waived.  Defs. Obj. to 2/28/24 R&R at 2-8.

Defendants are not permitted to raise new arguments in their Objection that they did not make in their briefing before the magistrate judge.  It is well settled that defendants cannot raise arguments on objection or appeal that they did not bring before the magistrate judge.  Murr, 200 F.3d at 901 n.4.  Defendants' failure to adequately raise these arguments prior to this Objection means that Defendants have waived the arguments.  See Childress, 2014 WL 3819347, at *3 ("It is well established that a party may not raise an argument, advance a theory, or marshal evidence before a district judge that was not fairly presented to the magistrate judge. The Magistrates Act was not intended to give litigants an opportunity to run one version of their case past the magistrate [judge], then another past the district court.").  That is precisely what Defendants seek to do here.

The Court further overrules Defendants' objection that the magistrate judge found their summary judgment arguments cursory or waived.  Courts routinely decline to consider such perfunctory, undeveloped arguments of the kind made by Defendants in their motion for summary judgment because it is not enough for a party to "mention a possible argument in the most skeletal way" and leave the court to "put flesh on its bones."  See Buetenmiller v. Macomb Cnty. Jail, 53 F.4th 939, 946 (6th Cir. 2022) ("[I]n instances where 'issues [are] adverted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation,'" they are considered forfeited) (citing <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995–96 (6th Cir. 1997)).

For all these reasons, Defendants' Objection No. 1 is overruled.

### 2. Defs. Objection No. 2: Whether the magistrate judge properly found that Ward's detention and conviction were not supported by probable cause

The magistrate judge found that that there was a genuine issue of material fact as to whether probable cause supported Ward's detention and conviction. The state court had determined that there was probable cause to prosecute Ward based on the testimony from Twilley, Cowan and Stancil. 2/28/24 R&R at 14 (citing Dkt. 123-12, PageID.4442); <u>see also</u> Dkt. 123-12, PageID.4527. The magistrate judge found, however, that there was "sufficient evidence that Twilley and Cowan testified falsely, and that Stancil's testimony could not alone support probable cause." 2/28/24 R&R at 14. Specifically, the magistrate judge found, based on the record evidence recited in the R&R and viewing that evidence in the light most favorable to Ward, that the DPD Defendants, Childs and Collins, participated in a scheme to "fabricate[] evidence by using inmate informants who falsely testified to jailhouse confessions by other inmates." <u>Id.</u> at 15-16 (citing Dkt. 129-9, PageID.6492–93, 6497–98, 6502, 6597–99). The magistrate judge cited record evidence that informants would try to get other inmates to confess to murders, and if the inmates did not confess, the informants would try to get as much information as they could, and the detectives would make up the rest of the story. <u>Id.</u> The informant would then sign a statement and testify to the alleged confession during the preliminary examination, and in exchange the detectives would give these informants privileges like food, alcohol, and conjugal visits. <u>Id.</u> (citing also Dkt. 128-20, PageID.6108). Childs took Twilley's and Cowan's statements against Ward in

this case, and Collins was the lead investigator on the case.  Id. at 15 (citing Dkt. 123-14, PageID.4710–11; Dkt. 123-15, PageID.4785–86; Dkt. 123-27, PageID.5319; Dkt. 123-28.)

The magistrate judge further found that "Twilley and Cowan benefitted from their cooperation with the DPD" in this case and that "a jury could reasonably find that Childs and Collins knowingly manufactured Twilley's and Cowan's testimony against Ward in exchange for leniency on their sentences." Id. at 17 (citing Dkt. 128-7, PageID.5630–31, 5633–34; Dkt. 128-9, PageID.5648–49).  Collins testified about Twilley's cooperation at a court hearing on Twilley's motion for relief from judgment, and the judge agreed to reduce Twilley's original sentence.  Id. Another DPD officer testified at a sentencing hearing that Cowan was vital to assisting the DPD with closing Ward's case and several other, and the judge departed from the guidelines range of five to 15 years and sentenced Cowan to 1 year probation.  Id.  These hearings took place only two months after Twilley and Cowan testified at Ward's preliminary examination.  Id.

The magistrate judge concluded that "Twilley's and Cowan's testimony could have impacted the jury's verdict" and was "material to the probable cause determination." Id. at 18. Childs ordered Ward arrested based on solely Stancil's statement that Ward told him he killed the victims, and Stancil has since "recanted his previous testimony about Ward's confession, denying that he and Ward never spoke about the victims' death." Id. at 18.  Without Twilley's and Collins false testimony, the magistrate judge found that Stancil's testimony alone could not support probable cause because "Childs and Collins had a glaring reason to disbelieve Stancil's statements: because Stancil was arrested as a suspect to the murders, he had a strong motive to cast blame on someone else." Id. at 23 (citing Creger v. Tucker, Nos. 23-5045/5047, 2024 WL 124437, at *12 (6th Cir. Jan. 11, 2024) and Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999)).  Further,

"Stancil's version of events kept evolving," and thus "[g]iven Stancil's inconsistencies and motive to lie, a jury could find that his testimony did not establish probable cause to support Ward's prosecution." Id. at 24.

Defendants do not object to the magistrate judge's finding that Twilley and Cowan testified falsely. Defendants argue in their objection only that "it is possible" that Stancil's testimony alone could support a finding of probable cause. Defs. Obj. to 2/28/24 R&R at 9–11. Defendants further contend that the prosecutor nevertheless did not rely solely on Stancil's testimony but also relied on the DPD Investigator's Report which included statements by others in addition to Stancil. Id. Defendants contend that the magistrate judge's reliance on Creger and Ahlers to find that Childs and Collins had a reason to disbelieve Stancil's statements because he was arrested as a suspect in the murders and thus had a strong motive to case blame on someone else is misplaced, and argue "[w]hile this may be true, any innocent individual seeking to clear their name would also have a strong motive to blame another." Id. at 10.

The Court finds that this dispute about the record evidence presents a classic question for the trier of fact to decide, not the Court. The court in Creger recognized that "witness statements to police are 'generally sufficient to establish probable cause without further corroboration" but that "uncorroborated statements might not suffice where there is an 'apparent reason' to believe the witness was lying or had not accurately described the event in question." Creger, 2024 WL 124437 at *12. The Court finds that the magistrate judge properly found, when viewing the record evidence in the light most favorable to Ward, that there was an apparent reason to believe Stancil was lying because he was arrested as a suspect for the very murders he was claiming Ward

committed and because his version of the events kept changing. See 2/28/24 R&R at 23-24. Defendants' Second Objection therefore is overruled.

> **3. Defs. Objection No. 3:  Whether the magistrate judge properly found that Childs and Collins "had" Twilley or Cowans testify at Ward's preliminary examination**

The magistrate judge found that "Ward has shown that Childs and Collins took part in obtaining" Twilley's and Cowan's fabricated testimony about Ward's purported confessions because "Childs took Twilley's and Cowan's statements," "Collins was the lead investigator on the case," and "prosecutor Agacinski confirmed that Childs and Collins had Twilley and Cowan testify at Ward's preliminary examination."  2/28/24 R&R at 15.  In support of this finding, the magistrate judge cited to Agacinski's sworn answers to interrogatories, in which he identified "Nancy Westveld, [him]self, Dale Collins, and Monica Childs" as being involved in having Twilley and Cowan testify at Ward's preliminary examination.  See id. (Citing Dkt. 29-7, PageID.6471-72).

Defendants object to the magistrate judge's reliance on Agacinski's interrogatory responses on two grounds. Defendants first object to the magistrate judge's terminology that Childs and Cowan "had" Twilley and Cowans testify at Ward's preliminary examination "simply because Agacinski said so."  Defs. Obj. to 2/28/24 R&R at 12.  Defendants also contend that is it untrue that Childs and Cowans "had" Twilley and Cowans testify because "police officers never determine who testifies at a preliminary examination or trial."  Id.

First, Federal Rule of Civil Procedure 56(c)(1)(A) expressly authorizes parties to resist summary judgment by pointing to contradictory evidence in interrogatory responses. See Alexander, 576 F.3d at 558 (noting that former Rule 56(e) "identifies affidavits, depositions, and

35

answers to interrogatories as appropriate items that may be used to support or oppose summary judgment").  That Agacinski's interrogatory response was prefaced by and "subject to" an objection does not change that.  Should Agacinski be called as a witness at trial, he could be questioned and cross-examined regarding his knowledge and the foundation of his given response.  It would be up to the factfinder, not the Court, to determine whether to credit his testimony or any documentary evidence admitted.  But on summary judgment, the Court is required to construe the record evidence in the light most favorable to the non-moving party.  Tolan v. Cotton, 572 U.S. 650, 660 (2014).  Here, that is Ward.

Considering all the record evidence, including that evidence discussed supra that (1) Childs and Collins, the investigators in Ward's case, participated in the Ninth Floor Lockup scheme to use false testimony from Twilley and Cowan in homicide investigations, including Ward's (Dkt. 129-9, PageID.6492–93, 6497–98, 6502, 6597–99; Dkt. 128-20, PageID.6108), Collins testified that he would not have been able to proceed against Ward without Twilley as a witness (Dkt. 123-3, PageID.4095; Dkt. 128-7, PageID.5631), that Twilley's and Cowan's statements about Ward's purported confession were taken by Childs after Ward was placed in the Ninth Floor Lockup (Dkt. 123-14, PageID.4710–11; Dkt. 123-15, PageID.4785–86; Dkt. 123-27, PageID.5319; Dkt. 123-28), and that Twilley and Cowans benefitted from providing false testimony at Ward's preliminary examination (Dkt. 128-7, PageID.5630–31, 5633–34; Dkt. 128-9, PageID.5648), the magistrate judge did not err in finding that there is a genuine issue of material fact as to whether Ward's detention and prosecution were supported by probable cause.  The prosecutor used Twilley's and Cowan's statements, taken pursuant to this alleged scheme, at the preliminary examination.  (Dkt. 123-12, PageID.4489-97, 4510-15).  And at Ward's trial, Twilley testified about Ward's alleged

36

confession, and Cowan's preliminary examination testimony was read to the jury.  (Dkt. 123-14, PageID.4700–06; Dkt. 123-15, PageID.4763–64, 4767–70).

The Court finds that the magistrate judge did not err in finding that a reasonable jury could conclude from this evidence that Childs and Collins "fabricated evidence by using informants who falsely testified to jailhouse confessions by other inmates" and that Childs and Collins, as the lead investigator and the officer who elicited the statements and provided them to the prosecutor, were "involved in having" or had Twilley and Cowan testify at the preliminary examination and at trial. 2/28/24 R&R at 15-17.  Summary judgment for Defendants is therefore not appropriate on this fabrication of evidence claim against Childs and Collins, and the Defendants' Objection No. 3 is overruled.

### 4.   Defs. Objection No. 4:  Whether the magistrate judge correctly applied <u>Marvaso v. Sanchez</u>, 971 F.3d 599 (6th Cir. 2020) to Ward's conspiracy claim

Defendants argue that the magistrate judge misapplied the Sixth Circuit's holding in <u>Marvaso v. Sanchez</u>, 971 F.3d 599 (6th Cir. 2020), in analyzing Ward's § 1983 conspiracy claim. Defs.' Obj. to 2/28/24 R&R at 13-15.  The magistrate judge stated that "to show that summary judgment on causation grounds should be granted, Childs and Collins had to present 'uncontroverted evidence' that Ward would not have been detained had he called Bradford as a witness."  2/28/24 R&R at 27 (citing <u>Marvaso</u>, 971 F.3d at 607).  Defendants assert that <u>Marvaso</u> states:

> To be sure, at the summary judgment stage, Defendants may be able to put on evidence that defeats Plaintiffs' allegations of proximate cause.  For example, if Defendants offer uncontroverted evidence of a superseding cause that cuts off the otherwise foreseeable chain of causation, then the district court might find that they are entitled to judgment as a matter of law.  However, at this stage of the

37

> proceedings, Plaintiffs have sufficiently alleged that Defendants' conspiracy was the cause in fact and proximate cause of their constitutional injury, and any further causal weakness should be considered at the summary judgment stage rather than on a motion to dismiss.

Marvaso, 971 F.3d at 607 (citations omitted).  Defendants contend that the Marvaso court's reference to "uncontroverted evidence" refers to the motion to dismiss stage rather than the summary judgment stage of the proceedings.  Defs. Obj. to 2/28/24 R&R at 13-14.

The Court rejects Defendants' interpretation of this passage in Marvaso.  The Sixth Circuit's use of "[f]or example, if Defendants offer uncontroverted evidence" clearly refers to the "summary judgment stage" of proceedings, where the parties are charged with presenting evidence supporting their positions, and not the motion to dismiss stage, where the parties instead rely on the allegations in the pleadings.  Thus, the magistrate judge correctly applied Marvaso to this case.

Defendants further argue that they have nevertheless presented "uncontroverted evidence" that, if Ward had presented his alibi witness, Pernell Bradford, he would not have been convicted.  Defendants assert that "it was only after the Conviction Integrity Unit [] was presented with Bradford's affidavit that it decided that Ward's conviction should be vacated."  Defs. Obj. to 2/28/24 R&R at 14-15 (citing 2/28/24 R&R at 6.)  Bradford stated in an affidavit that he witnessed Marcilis shoot Gilliam and Cornell and that he did not come forward earlier because his father and Ward told him to remain silent.  Id.

The Court finds that Defendants have failed to present "uncontroverted evidence" that Ward would not have been arrested or detained if he had called Bradford as a witness.  Defendants instead have presented nothing but their unsupported supposition that "[a]ny reasonable jury evaluating the testimony of an eyewitness versus the testimony of purported 'jailhouse snitches'

would have relied upon the former" and therefore that Bradford's testimony would have prevented Ward being arrested or detained.  Rather, this is a jury issue and Defendants' fourth Objection is overruled.  See Blount v. Stanley Eng'g Fastening, 55 F.4th 504, 513 (6th Cir. 2022) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.").

### 5. Defs. Objection No. 5:  Whether the DPD Defendants are entitled to immunity as to Ward's state law claims

The magistrate judge explained that an officer is entitled to immunity for state law intentional tort claims if (1) the acts were undertaken in the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority; (2) the acts were undertaken in good faith, or were not undertaken with malice; and (3) the acts were discretionary, rather than ministerial.  2/28/24 R&R at 31-32 (citing Odom v. Wayne Cnty., 760 N.W.2d, 217, 228 (Mich. 2008)).  The magistrate judge stated that Defendants dispute the second element, arguing that Ward has failed to prove they acted maliciously or in bad faith.  Id. The magistrate judge found that "Ward has produced evidence supporting his claim that Childs and Collins fabricated and withheld evidence as part of a scheme to obtain convictions" and "[a] jury could infer that Childs and Collins acted in bad faith."  Id.

Defendants argue in their objection only that "no jury would reasonably infer Childs and Collins acted in bad faith."  Defs. Obj. to 2/28/24 R&R at 15 (emphasis added).  The Court rejects this perfunctory objection.  As discussed supra, the magistrate judge cited to record evidence that Childs and Collins were part of a scheme of using jailhouse informants in which they knowingly manufactured Twilley's and Cowan's statements against Ward for leniency in their sentences, and

39

that these sentence reductions were never disclosed to the prosecutor.  The Court finds that the magistrate judge properly found that there was a genuine issue of material fact as to whether Childs and Collins acted in bad faith when they fabricated and withheld evidence against Ward.  The Court therefore overrules Defendants' Fifth Objection.

> **6.   Defs. Objection No. 6:  Whether the magistrate judge properly found that Childs and Collins are not entitled to summary judgment on Ward's claims that they fabricated and withheld evidence**

The magistrate judge found that Childs and Collins are not entitled to summary judgment on Ward's claims that they fabricated and withheld evidence.  2/28/24 R&R at 14-21.  The magistrate judge determined that the prosecutor, Agacinski, "was not involved in Twilley's or Cowan's sentencing proceedings, nor is there evidence that Childs or Collins informed him of these developments before trial" and thus "[a] reasonable jury could conclude that Childs and Collins withheld this material impeachment evidence."  Id. at 20-21.

Defendants object to this determination.  Defs. Obj. to 2/28/24 R&R at 16-17.  Defendants argue that the magistrate judge did not provide any legal support for her assertion that Childs and Collins were obligated to disclose Twilley's or Cowan's arrangements.  Id.  However, the magistrate judge explained that the obligation to produce exculpatory evidence extends to both prosecutors and police officers, and that "[p]olice officers fulfill their Brady obligations 'as long as they inform the prosecutor about the evidence that undermines the state's preferred theory of the crime.'"  2/28/24 R&R at 19 (citing D'Ambrosio v. Marino, 747 F.3d 378, 389 (6th Cir. 2014)).  The magistrate judge then cited evidence that Twilley's sentence was reduced in July 1994, just two months after Twilley testified at Ward's preliminary examination and at Collins' request, because of his cooperation with the DPD.  Id. at 20 (citing Dkt. 128-7, PageID.5630–31, 5633–34;

Dkt. 119-15).  And the magistrate judge recited that Cowan entered into a plea agreement in April

1994, just before he testified at Ward's preliminary examination, and that he was sentenced in July

1994 well below the guidelines range because of his cooperation in Ward's case and others.  Id.

(citing Dkt. 128-9, PageID.5648–49).  The magistrate judge concluded that Agacinski was not at

Twilley's or Cowan's sentencing proceedings and that there is no evidence that Childs or Collins

informed him of these events before Ward's trial.  Id.  Agacinski in fact testified that this

information was not disclosed to him prior to the trial.  (Dkt. 128-12, PageID.5779–83, 5788,

5842).  The Court agrees with the magistrate judge that on these facts a reasonable jury could

conclude that Childs and Collins withheld this material impeachment evidence from the

prosecutor.

Defendants further argue that the magistrate judge did not cite any authority "absolving

Agacinski of performing due diligence as to all of the prosecution's witnesses."  Defs' Obj. to

2/28/24 R&R at 17.  It is true that "the … prosecutor has a duty to learn of any favorable evidence

known to the others acting on the government's behalf in the case, including the police."  Kyles v.

Whitley, 514 U.S. 419, 437–38 (1995).  However, "the Brady duty extends to impeachment

evidence as well as exculpatory evidence, and Brady suppression occurs when the government

fails to turn over even evidence that is 'known only to police investigators and not to the

prosecutor.'"  Youngblood v. W. Virginia, 547 U.S. 867, 869–70 (2006) (quoting Kyles, 514 U.S.

at 438).  "Whether or not the attorney for the government knew of that information, a Brady

violation still occurs where the police know information that should have been disclosed but fail

or refuse to inform the prosecutor."  United States v. McClellon, 260 F. Supp. 3d 880, 885 (E.D.

Mich. 2017) (citing Youngblood, 547 U.S. at 869–70).  Accordingly, Defendants' Sixth Objection is overruled.

### C.  Ward's Objections to the 4/30/24 R&R

In the April 30, 2024 R&R, the magistrate judge "clarify[ied] its last R&R's conclusion that Ward's Fourth Amendment false arrest claim was untimely because it accrued when he was bound over for trial in May 1994."  4/30/24 R&R at 4.  The magistrate judge found that the same conclusion applied to "Ward's unlawful detention claim arising from his initial detention—his <u>pre-legal-process</u> detention between his arrest and the preliminary examination."  <u>Id.</u> (emphasis in original).  However, Ward's post-legal-process pretrial detention claim for his continued detention following the preliminary examination accrued when he was released from custody in February 2020 and thus is timely.  <u>Id.</u> at 5.  The magistrate judge then found that Ward alleges that Jorgensen and Sanders were only personally involved in his pre-legal-process detention, which claim is barred by the statute of limitations.  <u>Id.</u> at 6-7.  And because Ward does not allege Jorgensen or Sanders were involved in his continued detention after the preliminary examination, those Defendants are entitled to summary judgment on Ward's unlawful detention claim.  <u>Id.</u> at 7.

Ward asserts one Objection to the magistrate judge's April 30, 2024 R&R.  He argues that the magistrate judge erred in granting summary judgment to Jorgensen and Sanders on his false arrest and unlawful detention claims.  Ward Obj. to 4/30/24 R&R at 5-8.  Ward contends, as he did in his Objection to the magistrate judge's February 28, 2024 R&R, that the United States Supreme Court in <u>Manuel v. City of Joliet</u>, 580 U.S. 357 (2017) abrogated the false arrest accrual rule in <u>Wallace v. Kato</u>, 549 U.S. 384 (2007), upon which the magistrate judge relied.  The Court disagrees for the same reasons as stated <u>supra</u>.

First, Ward has already objected to the magistrate judge's determination that Ward's false arrest claim is time barred and he will not get a second bite at that argument here. And again, Ward's argument in his Objection that he was unable to bring a § 1983 false arrest claim until his conviction was overturned under Heck v. Humphrey, 512 U.S. 477 (1994), fails because this is a new argument he failed to make before the magistrate judge. It is therefore barred. See Murr, 200 F.3d at 902 n.1. And in any event, controlling Supreme Court and Sixth Circuit precedent holds that the Heck rule for delayed accrual does not apply to Ward's false arrest claim. See Wallace, 549 U.S. at 397.

Turning to Ward's unlawful pretrial detention claim in Count II of his Complaint. As discussed more fully supra, the Supreme Court in Manuel I did not abrogate the holding in Wallace that false arrest and false imprisonment claims accrue once the claimant is held pursuant to legal process. Thus, the decision in Manuel I does not undermine the magistrate judge's determination, based on Wallace, that Ward's statute of limitations for false arrest began to run at the time he was bound over for trial in May 1994, nor its determination that the statute of limitations on his pre-legal-process unlawful detention claim also began to run when Defendants initiated legal process. See Dibrell, 984 F.3d at 1162 (noting that "if the plaintiff remains detained, [false arrest and false imprisonment claims] … accrue when the false imprisonment ends with the issuance of legal process[.]"). As the Sixth Circuit has explained, "'[f]rom that point on,' a plaintiff relying on the law of torts to challenge any continuing detention must assert a malicious prosecution claim." Id. (citing Wallace, 549 U.S. at 390).

Finally, it bears noting that Ward does not object to the magistrate judge's finding that Ward fails to allege or show that Jorgensen or Sanders were personally involved in his continued

43

detention after the preliminary examination.   Indeed, Ward has dismissed his malicious prosecution, and fabrication and suppression of evidence claims against Jorgensen and Sanders. As the magistrate judge recognized, "[t]o succeed in a § 1983 claim, a plaintiff must show 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"   4/30/24 R&R at 5-6 (citing Iqbal, 556 U.S. at 676; Pineda, 977 F.3d at 490). Ward "must allege with particularity 'facts that demonstrate what each defendant did to violate the asserted constitutional right.'"   Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016) (quoting Heyne v. Metropolitan Nashville Pub. Schs., 655 F.3d 556, 564 (6th Cir. 2011)). The Court agrees with the magistrate judge that Ward has failed to allege that Jorgensen and/or Sanders were personally involved in his continued detention following his arrest and that they are entitled to summary judgment on Ward's post-legal-process unlawful detention claim in Count II. That post-legal-process unlawful detention claim will proceed against Defendants Childs and Collins.

The Court therefore overrules Ward's Objection to the magistrate judge's April 30, 2024 R&R.

## III.  CONCLUSION

For the reasons set forth above, the Court overrules Ward's Objections to the February 28, 2024 R&R, overrules Defendants' Objections to the February 28, 2024 R&R, overrules Ward's Objection to the April 30, 2024 R&R, accepts and adopts the Magistrate Judge's February 28, 2024 R&R and April 30, 2024 R&R, and grants in part and denies in part Defendants' motion for summary judgment.

44

All claims against Defendants Jorgensen and Sanders are dismissed, and Ward's § 1983 claims for false arrest (Count I), conspiracy stemming from the false arrest (Count IV), failure to protect (Count VII), and state-law gross negligence claims (Count XIII) against Childs and Collins are dismissed.

The following claims remain against Childs and Collins: § 1983 claims for post-legal process unlawful detention (Count II), fabrication and suppression of evidence (Count III), malicious prosecution (Count IV), conspiracy based on malicious prosecution and fabrication and suppression of evidence (Count V), and failure to intervene (Count VI), and state law claims for false arrest (Count IX), malicious prosecution (Count X), abuse of process (Count XI), and intentional infliction of emotional distress (Count XII).

SO ORDERED.

Dated: September 11, 2024                    s/Mark A. Goldsmith
      Detroit, Michigan                    MARK A. GOLDSMITH
                                          United States District Judge